In the Matter of Donald Joe LAYFIELD, Debtor.

Donald Joe LAYFIELD, Plaintiff,

v.

DIRECTOR OF PUBLIC SAFETY OF the STATE OF ALABAMA, Defendant.

Bankruptcy No. 81–02458.
Adv. No. 81–0540.

United States Bankruptcy Court,
N. D. Alabama, S. D.

July 20, 1981.

Thomas B. Hanes, Birmingham, Ala., for debtor.

Milton G. Garrett, Birmingham, Ala., Trustee.

Jack M. Curtis, Asst. Atty. Gen., Montgomery, Ala., for Alabama Dept. of Public Safety.

Jack Rivers, Birmingham, Ala., U. S. Trustee.

## OPINION

STEPHEN B. COLEMAN, Bankruptcy Judge.

### FACTS

The Debtor was involved in an automobile accident on June 9, 1978. At the time of the accident he carried no liability insurance. He sustained two default judgments for damages from this accident in the respective amounts of $6,000 each in the Circuit Court of Jefferson County Alabama, on December 4, 1980.

The Director of the Department of Public Safety suspended the Debtor's driver's license effective April 10, 1981, as the result of nonpayment of the judgments incurred.

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code, on April 20, 1981. Debtor duly scheduled the two judgment debts.

On May 18, 1981, the Debtor's attorney notified the Department of Public Safety, through its office in Birmingham, that the

Debtor had filed for relief under the Bankruptcy Code. Upon instructions of Debtor's attorney, the Debtor went to the Birmingham Office of the Department of Public Safety and furnished the Director, through his agent, with a copy of the Bankruptcy Petition and a notice of the § 341 meeting. The Debtor was there caused, by agents of the Director, to surrender his license and was told that his license would not be returned until special high-risk (SR22) insurance was filed and a $25 reinstatement fee was paid.

### ISSUES

1. Whether the primary purpose of the Alabama Motor Vehicle Safety Responsibility Act is for the collection of judgment debts; and

2. Whether the second clause of § 32–7–15 of the 1975 Alabama Code is in conflict with the *Perez v. Campbell* Doctrine as codified in Section 525 of the U. S. Bankruptcy Code.

### PROPOSITIONS OF LAW

■ The suspension of the Debtor's driver's license is predicated upon the Alabama Motor Vehicle Safety Responsibility Act, specifically Sections 32–7–13 through 32–7–15 of the 1975 Code of Alabama. The purpose of the chapter is to require and establish financial responsibility for every owner or operator of a motor vehicle *involved in an accident in this State. Mooradian v. Canal Insurance Co.*, 272 Ala. 373, 130 So.2d 915 (1961). Emphasis added.

The pertinent Alabama Code sections provide:

32–7–13. Courts to report nonpayment of judgments.

Whenever any person fails within 90 days to satisfy any judgment, upon the written request of the judgment creditor or his attorney, it shall be the duty of the clerk of the court, or of the judge of the court which has no clerk in which any such judgment is rendered within this state, to forward to the director immediately after the expiration of said 60 days a certified copy of such judgment.

If the defendant named in any certified copy of a judgment reported to the director is nonresident, the commissioner shall transmit a certified copy of the judgment to the official in charge of the issuance of licenses and registration certificates of the state of which the defendant is a resident. (Acts 1951, No. 704, p. 1224, § 12.)

32–7–14. Suspension of license, registration or operating privilege for nonpayment of judgment.

(a) *Suspension for nonpayment of judgment.* The director upon the receipt of a certified copy of a judgment shall forthwith suspend the license and registration and any nonresident's operating privilege of any person against whom such judgment was rendered, except as hereinafter otherwise provided in this section and in Section 32–7–17.

32–7–15. Suspension to continue until judgments paid and proof given.

The license, registration and nonresident's operating privilege shall remain suspended and shall not be renewed, nor shall any such license or registration be thereafter issued in the name of such person, including any such person not previously licensed, unless and until every judgment is stayed, satisfied in full or to the extent hereinafter provided and until the said person gives proof of financial responsibility subject to the exemptions stated in Sections 32–7–14 and 32–7–17.

A discharge in bankruptcy following the rendering of any such judgment shall not relieve the judgment debtor from any of the requirements of this section and Sections 32–7–13 and 32–7–14. (Acts 1951, No. 704, p. 1224, § 14.)

The sections of the Alabama Statute are very similar to the Arizona Statute reviewed by the U. S. Supreme Court in *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

In that case the Court held that the provision that "discharge in bankruptcy following the rendering of any such judgment shall not relieve the judgment debtor from

any of the requirements of this article," contained in Arizona Revenue Statute, Section 28–1163(b), part of the Motor Vehicle Safety Responsibility Act, directly conflicted with Section 17 of the Bankruptcy Act, which stated that a discharge in bankruptcy fully discharges all but certain specified judgments, and was unconstitutional as violative of the Supremacy Clause, Article 6, Clause 2, of the *United States Constitution.* The court declared that two earlier cases, *Kesler v. Department of Public Safety,* 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641, and *Reitz v. Mealey,* 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21, had no authoritative effect to the extent they were inconsistent with the controlling principle that state legislation that frustrates the full effectiveness of Federal law is invalidated by the Supremacy Clause. *Perez* at 638, 91 S.Ct. at 1705. The Arizona Courts based their decisions in part on the *Kesler* and *Reitz* decisions and construed the Arizona Motor Vehicle Safety Responsibility Act as having "as its principle purpose the protection of the public using the highways from financial hardship which may result from the use of automobiles by financially irresponsible persons." *Schecter v. Killingsworth,* 93 Ariz. 273, 380 P.2d 136 (1963).

The Alabama Courts have construed the Alabama Motor Vehicle Responsibility Act as: "Public policy, as expressed in this chapter, provides that those who are answerable for injuries and damages resulting from their fault in the use and maintenance of an automobile who do not have automobile liability insurance, or who are otherwise unable to financially respond to such damages, are subject to the loss of their driving privileges. *State Farm Fire & Casualty Co. v. Lambert,* 291 Ala. 645, 285 So.2d 917 (1973).

The Supreme Court in *Perez* indicated that "(w)hat is at issue here is the power of a State to include a part of this comprehensive enactment *designed to secure compensation for automobile accident victims* a section providing that a discharge in bankruptcy of the automobile accident tort judgment shall have no effect on the judgment debtor's obligation to repay the judgment credi-

tor, at least insofar *as such repayment may be enforced by the withholding of driving privileges by the State.*" 402 U.S. at 643, 91 S.Ct. at 1708. (Emphasis added.) Thus, the constitutional question faced by the Supreme Court was whether a state statute that protects judgment creditors from financial creditors from financially irresponsible persons "is in conflict with a Federal Statute that gives discharged debtors a new start unhampered by the pressure and discouragement of pre-existing debt." 402 U.S. at 649, 91 S.Ct. at 1711. The Court declared the Arizona Act constitutionally invalid, and in so holding recognized the primary importance of the fresh start doctrine. "One of the primary purposes of the Bankruptcy Act is to give debtors a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." 402 U.S. at 648, 91 S.Ct. at 1710 citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

We are faced in the present case with a state law very similar to the Arizona Motor Act that the Supreme Court declared unconstitutional. However, the Federal law which it interferred with is no longer in effect. The Bankruptcy Act has been repealed, along with Section 17 upon which the *Perez* case was decided. Does this mean that the *Perez* decision is no longer in effect since Section 17 is no longer in effect? Not necessarily. In its place, Congress has enacted the Bankruptcy Code with Sections 524 and 525.

Section 542(a)(1) and (2) provides that:

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained; to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any

act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived; and . . .

The Legislative history indicates that the injunction in 524(a)(2) is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a *total* prohibition on debt collection efforts. *House Report No.* 95–595, 95th Cong., 1st Sess. (1977) 365–6, as cited in 1979 *Collier Pamphlet Edition*, Part 3, p. 249, U.S.Code Cong. & Admin.News 1978, p. 5787. (Emphasis added.)

Section 524 prohibits the employment of acts to recover or collect discharged debts. The effect of Section 525 is to give further weight to this prohibition. 3 *Collier on Bankruptcy*, 15th Edition, ¶ 525.02, p. 525–2.

Section 525 provides in part:

" . . . a governmental unit may not deny, revoke, suspend, or refuse to renew a license, . . . or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, . . . a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, . . . solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, . . . is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act."

"Section 525 is designed to prevent governmental units from frustrating the fresh start policy of the Code by discriminating against persons who have been debtors under the Code or bankrupts under the prior Act. Section 525 codifies *Perez*, . . . (and mandates) that a governmental unit may not discriminate against a person . . . *in any manner*, that will frustrate the fresh start policies of the Code." 3 *Collier*, p. 525–2. (Emphasis added.)

If the case at bar, despite the fact that the two judgments were scheduled by the debtor and are dischargeable debts, the Director suspended the license based on the fact that the two judgments went unsatisfied and, thus refused to restore the Debtor's operating privileges until he provides proof of financial responsibility in the form of special "high-risk" insurance. Proof of special insurance, or any insurance, is not required of all drivers before a license is issued. Indeed, the Alabama Supreme Court states that "This chapter does not require operators or motor vehicles to furnish evidence of financial responsibility *before* issuance of a driver's license or certification of registration is issued. Proof of financial responsibility is not required until a motor vehicle is involved in an accident." *Mooradian v. Canal Ins. Co.*, 272 Ala. 373, 130 So.2d 915 (1961).

There is no doubt that the Alabama Motor Safety Vehicle Act was designed to protect and secure compensation for automobile accident victims. Indeed, the Debtor here is required to purchase expensive, high-risk insurance *solely* because of a debt incurred prior to bankruptcy which is fully dischargeable under Chapter 7 of the Bankruptcy Code. If the Debtor does not purchase this insurance, then his driving privilege will continue to be suspended until he does. This, in effect, makes the State law's primary purpose one of collecting an unsatisfied judgment debt rather than functioning as a protection for other drivers, especially since payment may be enforced by the withholding of driving privileges by the State. The ability to drive is a very important benefit.

The State argues that the debtor falls into a group of all *judgment debtors* in automobile accident lawsuits who fail to respond to the judgment entered against them within sixty (60) days. All must maintain proof of financial responsibility by purchasing high-risk insurance. But what the State does not recognize is that bankruptcy wipes away all personal liability of the debtor for dischargeable judgments.

The language in Sections 524 and 525 *voids* any judgment at any time obtained and prohibits discrimination based upon a debt which is discharged under the Bankruptcy Code.

The situation here is exactly like the *Perez* case. As under the Arizona Act, when a judgment debtor in an automobile accident lawsuit fails to respond to the judgment entered against him within sixty (60) days (§ 32–7–13) then he must overcome two hurdles in order to regain his driving privileges. The judgment debtor is required to satisfy the judgment and give proof of financial responsibility.

 This is in direct contravention of *Perez* and its codification in Section 525 of the Bankruptcy Code. The language of the Code and the Legislative history make Congress' intent clear that once a debt has been discharged under the Code, a State may not treat a debtor differently from a person who never incurred a debt. *Henry v. Heyison,* 4 B.R. 437, 6 B.C.D. 243 (Bkrtcy. E.D. Pa. 1980). The financial responsibility requirement of purchasing high-risk insurance is not required of all drivers, instead a person with a discharged debt is treated differently than a person who never had a debt. This difference impairs a fresh start and is exactly what Sections 524 and 525 were designed to prevent. Therefore, this Court holds that the Director of the Public Safety Commission is without authority to suspend the license, to withhold it from the Debtor or to condition its return with the requirement of purchasing special high-risk insurance due to the impairment of the "Fresh Start" doctrine. This decision is not meant to hamper the State in insuring the safety of its motorists. Indeed, this Court sees the need for mandatory liability insurance and feels it is in the public interest to require it of *all* drivers before their license is issued, and what is said here does not mean that the Court condones the use of the highways by irresponsible drivers from the standpoint of safety and responsibility. Many States require *all* drivers to furnish liability insurance as a condition to the privilege of use of highways[1], and these statutes have been upheld.

This is addressed to the Legislature of Alabama and well within their power. Section 32–7–15 of the Alabama Act, as it is presently written, makes a discriminatory distinction based exclusively on a debt and contravenes the fresh start of the debtor. It is therefore invalid under the *Perez* doctrine as codified in Section 525 of the Bankruptcy Code.

---

1. Six other Southern States have a compulsory liability insurance law for all motor vehicles subject to registration and/or mandatory "no-fault" insurance law. These include Georgia, Florida, North and South Carolina, Louisiana, and Kentucky. *Digest of Motor Laws,* 47th Ed., Compiled by American Automobile Association's Public Relations Department, Falls Church, Va. (1980).