In re WHEELING–PITTSBURGH
STEEL CORPORATION, et
al, Debtor.

WHEELING–PITTSBURGH STEEL
CORPORATION, et al, Plaintiff,

v.

PENNSYLVANIA HUMAN RELATIONS COMMISSION, West Virginia Human Rights Commission, National Labor Relations Board, and the Equal Employment Opportunity Commission, Defendants.

Bankruptcy No. 85–793 PGH.
Adv. No. 86–90.

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 11, 1986.
As Amended Sept. 2, 1986.

M. Bruce McCullough, Buchanan Ingersoll, Pittsburgh, Pa., for debtor.

Corinna L. Metcalf, Washington, D.C., for N.L.R.B.

William R. Fewell, Jr., Pittsburgh, Pa., for Pa. Human Relations Com'n.

James Garrett, Philadelphia, Pa., for E.E.O.C.

OPINION ON DEBTOR'S COMPLAINT
FOR INJUNCTIVE RELIEF

WARREN W. BENTZ, Bankruptcy Judge.

*Case Summary*

Wheeling-Pittsburgh Steel Corporation, Et Al, filed a Complaint for Injunctive Relief under § 362 to stay the administrative proceedings of the above-captioned defend-

ants. For the reasons discussed below,[1] we find that the administrative proceedings are excepted from the automatic stay by § 362(b)(4) and (5). Therefore, the Complaint for Injunctive Relief will be dismissed.

## Jurisdiction

This court has jurisdiction over the parties and subject matter of this action under 28 U.S.C. § 1334 and the General Order of Reference of the United States District Court for the Western District of Pennsylvania dated October 16, 1984 entered pursuant to 28 U.S.C. § 157. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O).

## Facts

On April 16, 1985, Wheeling-Pittsburgh Steel Corporation and seven of its wholly-owned subsidiaries (collectively the "Debtor") filed separate voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[2] At the time of the Chapter 11 filing, the Debtor was, and still is, the subject of various investigations and administrative proceedings instituted by the Pennsylvania Human Relations Commission ("PHRC"), the National Labor Relations Board ("NLRB"), the Equal Employment Opportunity Commission ("EEOC"), and the West Virginia Human Rights Commission ("WVHRC") (collectively the "Proceedings"). The Proceedings involve alleged unfair labor practices and discrimination claims (e.g., age, sex) arising out of prepetition incidents between the Debtor and some of its former employees. The relief sought by the former employees includes work reinstatement, back benefits and back pay.

In the course of their respective investigations, the PHRC, the NLRB, the EEOC, and the WVHRC (collectively the "Agencies") made informal requests for and served subpoenas duces tecum on the

Debtor to obtain books, records and other documentation which relate to the pending Proceedings. To date, the Agencies are dissatisfied with the Debtor's response to the requests for information.

Some of the alleged claims against the Debtor are in the investigatory stages; other claims are in the early stages of adjudication; and still other claims are at various levels of appeal. The Debtor opposes the postpetition prosecution of the Agencies' claims, and filed a Complaint for Injunctive Relief (the "Complaint") in this court.

In its Complaint, the Debtor alleges that the Proceedings are stayed by 11 U.S.C. § 362 because the Agencies seek money damages. The Debtor further alleges that the Proceedings should be stayed because the costs of defense and the possibility of a money judgment threaten the assets of the Debtor's estate. Finally, the Debtor argues that the Proceedings should be stayed because the Debtor's internal work staff is so overburdened by the Agencies' (and other creditors') requests for documents and records that the staff's time and efforts are diverted away from their everyday responsibilities, thereby threatening the Debtor's reorganization.

In response to the Complaint, the EEOC and the NLRB filed separate motions to dismiss, and the PHRC filed an answer and a motion for summary judgment. A hearing was held on March 14, 1986 after which the parties attempted, without success, to amicably resolve their disputes.

## Discussion

The Agencies argue that since they are validly exercising their governmental police power, their Proceedings are excepted from operation of the automatic stay by § 362(b)(4). The Agencies further argue that under § 362(b)(5), they are free to proceed with litigation to determine the appropriate remedy for any violations

1. This Opinion constitutes this court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

2. The eight bankruptcy cases are being jointly administered for purposes of convenience pursuant to court order.

found, including ascertaining back pay and back benefits owed, entering money judgments for back pay and back benefits, and enforcing back to work orders. The Agencies also argue that since they are otherwise validly exercising their governmental police powers in fixing monetary judgments and enforcing non-monetary judgments, the fact that their Proceedings may impose burdens on the Debtor's work staff and require the Debtor's estate to expend assets for the costs of defense is not grounds, under § 362, for bringing the Proceedings within the scope of the automatic stay.

### The Automatic Stay

Under 11 U.S.C. § 362(a), the filing of a bankruptcy petition acts as a stay of legal proceedings commenced prior to the filing of the petition. Section 362(a) provides that the automatic stay "operates as a stay, applicable to *all* entities" (emphasis added). "The legislative history is clear that, in general, this was intended to extend to governmental entities as well as private ones." *Penn Terra Ltd. v. Dept. of Environ. Resources,* 733 F.2d 267, 271 (3rd Cir.1984) (citing legislative history).

Nevertheless, subsections 362(b)(4) and (5) except from operation of the automatic stay, the commencement or continuation of actions and proceedings by governmental units to enforce their police powers. *Penn Terra,* 733 F.2d at 272. "Subsection 365(b)(5), however, creates a further 'exception to the exception,' in that actions to enforce money judgments *are* affected by the automatic stay, even if they otherwise were in furtherance of the state's police powers." *Id.* (emphasis in original) As the legislative history explains:

> Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the *entry* of a money judgment, but does not extend to permit *enforcement* of a money judgment.

*Penn Terra,* 733 F.2d at 272 (emphasis added) (citations to legislative history omitted). Thus, the Bankruptcy Code and legislative history make clear that if the Agencies are validly exercising their police power, they are not stayed by § 362 from entering money judgments and enforcing non-monetary judgments against the Debtor. *Penn Terra,* 733 F.2d at 275.

It is clear that the PHRC, the NLRB, the EEOC and the WVHRC are acting pursuant to their police powers in investigating and prosecuting alleged unfair labor practices and age and sex discrimination violations. *See, e.g.,* Pa.Stat.Ann. tit. 43 § 952 (Purdon 1964) (Pennsylvania Human Relations Act Findings and Declaration of Policy ... "This act shall be deemed an exercise of the police power of the Commonwealth for the prosecution of the public welfare, prosperity, health and peace of the people of the Commonwealth of Pennsylvania"). The Debtor does not dispute this fact.

It is equally clear to this court that the Agencies are not at this time attempting to enforce any money judgments against the Debtor. The Agencies only wish to enter, but not execute on, money judgments, and enforce non-monetary judgments. Therefore, in seeking to obtain judgments for back pay and back benefits, and in enforcing back to work orders, we do not understand the Agencies to be doing anything more than the Bankruptcy Code permits them to do. *See N.L.R.B. v. Evans Plumbing Co.,* 639 F.2d 291 (5th Cir.1981) (Action of NLRB in ordering employer to reinstate two employees whom it allegedly discriminatorily discharged fell within statutory exception to the automatic stay); *E.E.O.C. v. Rath Packing Co.,* 37 B.R. 614 (D.Ct.Iowa 1984) (E.E.O.C. proceedings against the debtor up to the entry of judgment fell within government police powers exception to the automatic stay).

It may be argued that enforcement of a back to work order is tantamount to enforcement of a money judgment inasmuch as the employer is required to pay money over to a reinstated employee that, in the absence of a back to work order, would not have to be paid. We think, however, that *Penn Terra's* explanation of the terms

"money judgment" and "enforcement of a money judgment" militates against that argument.

In *Penn Terra*, the Court of Appeals for the Third Circuit explained that a money judgment:

> is an order entered by the court or by the clerk, after a verdict has been rendered for plaintiff, which adjudges that the defendant shall pay a sum of money to the plaintiff. Essentially, it need consist only of two elements: (1) an identification of the parties for and against whom judgment is being entered, and (2) a *definite* and *certain* designation of the amount which plaintiff is owed by defendant.

*Penn Terra*, 733 F.2d at 275 (emphasis in original).

The Court then distinguished entry of a money judgment from a proceeding to enforce a money judgment:

> The paradigm for [enforcement of a money judgment] is when, having obtained a judgment for a sum certain, a plaintiff attempts to seize property of the defendant in order to satisfy the judgment. It is this seizure of a defendant-debtor's property, to satisfy the judgment obtained by a plaintiff-creditor, which is proscribed by subsection 362(b)(5).

*Penn Terra* 733 F.2d at 275 (footnote omitted).

■ The Third Circuit recognized, however, that some actions by a governmental unit may not facially resemble an enforcement of a money judgment and yet in substance be an action to obtain and enforce a money judgment. *Id.* In those situations, it is necessary to look beyond the form of such actions and determine whether the governmental unit is attempting to achieve in actuality what a money judgment was intended to accomplish. *Id.* at 277–78. In this regard, the Court explained:

> that an important factor in identifying a proceeding as one to enforce a money judgment is whether the remedy would compensate for *past* wrongful acts resulting in injuries already suffered, or protect against potential *future* harm.

Thus, it is unlikely that any action which seeks to prevent culpable conduct in *futuro* will, in normal course, manifest itself as an action for a money judgment, or one to enforce a money judgment. *Id.*, at 276–77.

Applying the above analysis to the facts before it, the Court in *Penn Terra* reasoned that the Commonwealth Court injunction, in directing the debtor to spend money to rectify environmental hazards, "was meant to prevent future harm to, and to restore, the environment." *Id.* at 278. Accordingly, the Court held that the suit brought by the Department of Environmental Resources did not constitute an action to enforce a money judgment. *Id.*

■ In the instant case, the alleged discriminatees who seek back to work orders in essence claim that they have been harmed by their wrongful terminations. This is an ongoing harm, they claim, which will continue into the future until rectified by a back to work order.

It must be emphasized that a back to work order is not, by itself, intended to provide monetary compensation for past injuries; those ills are remedied by back pay and back benefit orders which are not enforceable in bankruptcy without an order of court. The practical and intended effect of a back to work order is the prevention of future harm: continued unemployment as a result of a wrongful termination. It is true that a back to work order will result in the debtor having to pay money over to the reinstated employee (i.e., a salary) which would not have to be paid absent the back to work order. However, this expenditure of money is consideration for work performed by the employee post-reinstatement; this money is not compensation for past harm. In any event, the court in *Penn Terra* refused to go so far as to hold that any order which requires the debtor to spend money is a "money judgment" for purposes of § 362(b)(5). *Id.* at 277–78. The proper focus is "on the nature of the injuries which the challenged remedy is intended to redress—including whether the

plaintiff seeks compensation for past damages or prevention of future harm—." *Id.* at 278. In our view, back to work orders are intended to redress future harm, and therefore do not constitute an attempt to enforce a money judgment.

Somewhat more problematical is the Debtor's assertion that the monetary costs of defending the Agencies' actions are substantial and threaten the success of the reorganization. Relatedly, the Debtor contends that the Agencies' requests for books and records divert the Company's already overburdened staff from their everyday responsibilities, thereby jeopardizing the success of the reorganization.

Assuming *arguendo* that the costs of defending the Agencies' claims, either alone or together with the Debtor's limited staff problems, threatens the reorganization, the Debtor has pointed to no legal authority which permits us to weigh these considerations under a § 362(b)(4) and (5) analysis. In the absence of such authority, this court is unable to override the Bankruptcy Code's clear direction that government agencies acting pursuant to their police power be permitted to investigate and prosecute their claims to the extent provided by subsections 362(b)(4) and (5).

There is some support in the case law, however, that under certain circumstances, a court may use § 105 to enjoin actions by government authorities that are otherwise excepted from the automatic stay by § 362(b)(4) and (5).[3] *See, e.g., In re King Memorial Hospital Inc.,* 4 B.R. 704 (Bankr.S.D.Fla.1980) (dicta). However, the Debtor's Complaint was limited to injunctive relief under § 362. The facts and legal arguments relating to a possible § 105 injunction against the Agencies, independent of the automatic stay imposed by § 362, were not fully developed on the record. Therefore, the court at this time is unable to make findings of fact and conclusions of law which would support injunctive relief under § 105.

The Debtor may wish to file a complaint for injunctive relief under § 105 and present evidence, testimony and legal authority to support its theory that the costs of defense and burden on its company staff justify injunctive relief against the Agencies' proceedings. However, with regard to the Debtor's instant Complaint under § 362, we are constrained to hold that the automatic stay does not prevent the Agencies from obtaining judgments against the Debtor for back pay and back benefits owed to discriminatees, and does not bar the enforcement of back to work orders. The enforcement of any back pay and back benefit awards, of course, remains subject to the automatic stay.

For the foregoing reasons, the Debtor's Complaint for Injunctive Relief against the National Labor Relations Board, the Equal Employment Opportunity Commission, the Pennsylvania Human Rights Commission and the West Virginia Human Rights Commission will be dismissed by separate order.

---

**3.** Section 105 provides that "The court may issue any order, process, or judgment that is nec-essary or appropriate to carry out the provisions of this title."