In re Donald Lee HARRIS, Debtor.

Wayne C. GRANGER and Winifred M. Granger, Applicants,

v.

Donald Lee HARRIS, Respondent.

Bankruptcy No. 87–B–15125–M.

United States Bankruptcy Court, D. Colorado.

April 25, 1988.

Martin J. Berkley, Boulder, Colo., for debtor.

James A. Martell, Fort Collins, Colo., for applicants.

## OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on Wayne C. Granger and Winifred M. Granger's ("Applicants") Motion for Relief from the Automatic Stay. The Applicants wish to proceed and litigate against Donald Lee Harris ("Debtor") in state court to determine the Debtor's liability in a real estate transaction and, if successful, collect any judgment from the Colorado Real Estate Recovery Fund ("Recovery Fund") pursuant to Colorado Revised Statute § 12–61–301 *et seq.*

## I. BACKGROUND

The Debtor is a licensed real estate broker in the State of Colorado. In March 1986, the Applicants entered into a Commercial Contract to Buy and Sell Real Estate to purchase the Carter Valley Campground ("Campground"). The Applicants claim that the Debtor, as an agent for the owner of the Campground, submitted financial statements in order to induce them to buy the Campground. The purchase transaction was concluded later that month. The Applicants claim that after the purchase, they discovered the financial statements which they relied on, were false. In February 1987, the Applicants filed a Complaint in Larimer County District Court against the Debtor and the owner of the Campground alleging fraud and negligent misrepresentation. The Debtor denied the allegations in his Answer to the

state court Complaint. The Larimer County lawsuit was set for trial on January 12, 1988 when the Debtor filed his Chapter 13 Petition and an Order for Relief was entered on December 14, 1987, thereby vacating the state court trial.

The Applicants seek relief from the automatic stay "for cause" under 11 U.S.C. § 362(d)(1) so that they may proceed with their state court lawsuit to determine the liability of the Debtor. If successful, the Applicants intend to proceed to collect from the state Recovery Fund any judgment they obtain, pursuant to C.R.S. § 12–61–301 *et seq.* The Recovery Fund was established to provide a monetary fund for satisfying judgments, based on real estate transactions, against real estate brokers and salesmen who have insufficient assets to pay such judgments. *Chetelat v. District Court,* 196 Colo. 473, 586 P.2d 1335 (1978). The Applicants acknowledge that they are prohibited from going against the Debtor directly to collect on any judgment, and will look only to the Recovery Fund for execution on the judgment.

Applicable state law requires that in order for the Applicants to collect from the Recovery Fund, (1) liability on the part of the Debtor must be established, (2) a writ of execution must be issued and returned unsatisfied, and (3) a final Order from the state court must be obtained directing payment of the judgment from the state Recovery Fund. *See,* C.R.S. § 12–61–303. The Applicants claim that if they are not allowed to proceed in state court to establish the Debtor's liability and satisfy the statutory requirements, they will be prohibited from recovering on their claim against the Debtor from the Recovery Fund.

The Debtor has several objections. First, Debtor contends that under the "balance of hurt" test, relief from automatic stay should not be granted. The Debtor claims to be living on a "minimal amount of money" and his budget is insufficient to pay the cost of litigating the state court lawsuit. The Debtor claims that he cannot reduce or minimize attorneys' fees even by a default or stipulation of the parties in litigating issues because of C.R.S.

§ 12–61–304. Second, and perhaps more important, if the Applicants are successful and the Recovery Fund pays all or a portion of the Debtor's obligation, then pursuant to C.R.S. § 12–61–306, the Debtor's real estate license will *automatically be revoked* by the State of Colorado and he will be unable to renew his license until after he has repaid the Recovery Fund. This, the Debtor maintains, would deprive him of his occupation, eliminate his income, and render him unable to propose a feasible Chapter 13 Plan or make his payments under the Chapter 13 Plan. Significantly, a provision of the Recovery Fund statute provides that: "Other than when the claim or judgment is based on negligence, a discharge in bankruptcy shall not relieve a person from the penalties and disabilities provided in this part 3." This is a specific state effort, by statute, to insure self-executing, effective enforcement of these penalty provisions against bankruptcy debtors.

The two issues before this Court are: (1) whether relief from the automatic stay should be granted in favor of the Applicants solely to establish the liability of the Debtor and, (2) if the Applicants are successful and collect any judgment from the Recovery Fund, can the State of Colorado revoke or suspend the Debtor's real estate license until the Debtor replenishes the Recovery Fund?

## II. DISCUSSION

The two issues before this Court are similar to those previously considered in this District. Judge Gueck issued two opinions which discuss (1) granting relief from stay to creditors seeking recovery from the state Recovery Fund and (2) the potential conflict between state license revocation terms and the Bankruptcy Code; *In re Phillips,* 40 B.R. 194 (Bankr.Colo.1984); *In re Fasse,* 40 B.R. 198 (Bankr.Colo.1984); with which Judge Brumbaugh concurs in *dicta, In re Schierholz,* 52 B.R. 50 (Bankr. Colo.1985).

### Relief From Stay

In *Phillips,* the applicants obtained a state court judgment before the debtor

filed bankruptcy. The applicants sought relief from the automatic stay in order to exercise their rights to recover from the fund. The procedure then in effect required under the state law, two additional steps to perfect and pursue the applicants' claim against the Recovery Fund. First, the applicants needed to obtain a court order directing payment from the fund. Second, the applicants needed to get a writ of execution issued and returned unsatisfied. The Court granted relief from stay allowing the creditors to exercise those rights.

In *Fasse*, the applicant sought relief from the permanent injunction provided in 11 U.S.C. § 524(a)(2) to proceed in state court to establish the debtor's liability in a real estate transaction and, if successful, to seek recovery solely from the Colorado Real Estate Recovery Fund. Judge Gueck permitted the creditor to proceed in state court against the debtor to establish liability and, if successful, to permit the creditor to proceed solely against the real estate Recovery Fund or a third party to collect their judgment. Judge Gueck stated:

> ... [W]hen it is necessary to commence or continue a suit against a debtor in order to establish liability of another, such a suit is not barred by § 524, where enforcement proceedings are not asserted against the debtor. *In the Matter of McGraw*, 18 B.R. 140 (Bankr.W.D.Wis. 1982).

Other jurisdictions have ruled accordingly.[1]

Relief from the automatic stay pursuant to Section 362(d) may be modified for "cause." Courts have modified the automatic stay to permit an applicant to pursue a civil action against a debtor if two conditions are met: (1) that no great prejudice will result to the debtor or the debtor's estate, and (2) the hardship to the creditor

resulting by continuing the stay considerably outweighs the hardship to the debtor by modification of the stay. *In re Phillips*, *supra* at 197; *Matter of Holtkamp*, 669 F.2d 505 (7th Cir.1982); *Matter of McGraw*, 18 B.R. 140 at 142 (Bankr.W.D. Wis.1982).

▉ Addressing the "hardship" condition first, the Debtor contends that the cost to defend the state court litigation, especially on a minimal budget, constitutes a substantial hardship. The Debtor tries to distinguish the present case from the *Phillips* and *Fasse* cases where nothing of substance was required by the applicants to secure their judgment and no real costs or attorney's fees would be incurred by the debtor in each of those cases. However, research reveals that: "While the cost of defending in a civil action has been given serious consideration by bankruptcy courts, no case has found the cost of defending, by itself, to be 'great prejudice' as to bar modification of the stay." *In re Phillips*, *supra* at 197; *Matter of McGraw*, *supra* at 142; *In re Terry*, *supra* at 582.

In the present case, the Debtor can stipulate to matters in the Larimer County lawsuit and thus reduce his litigation cost, or he can choose to not defend this case at all and permit a default judgment to enter. The Debtor contends that a stipulation or default judgment will not reduce the cost of litigation because under C.R.S. § 12–61–304, the stipulation or default judgment can be attacked. If the judgment against the Debtor is attacked, then it becomes a fight between the Applicants (judgment creditors) and the real estate commission.[2] The Debtor need not incur the cost of defending the Recovery Fund for the Real Estate Commission. The only hardship to the Debtor would be the cost of

**1.** *See, Green v. Yang*, 29 B.R. 682 (S.D.Ohio 1983)—recovery from a real estate fund; *Matter of McGraw*, 18 B.R. 140 (Bankr.W.D.Wis.1982) —relief from automatic stay granted so applicant can determine liability of debtor in order to seek recovery from debtor's employer under doctrine of *respondeat superior; Matter of Holtkamp*, 669 F.2d 505 (7th Cir.1982)—lifting of automatic stay upheld to allow civil action for damages for personal injuries against debtor,

but prohibited collection of judgment against debtor; and *In re Terry*, 12 B.R. 578 (Bankr.E.D. Pa.1981)—relief vacated so as to permit patient compensation panel to make findings and award on physical malpractice, but prohibited collection of any judgment entered.

**2.** C.R.S. § 12–61–304.

testifying at a rehearing before the Real Estate Commission.

Without modification of the automatic stay, the Applicants would be prohibited from seeking from a third-party the collection of a debt to which they may be entitled. It is inequitable to prevent a creditor from seeking recovery on a debt from a solvent third-party by the fact that the primary responsible party has filed bankruptcy. Preventing collection from a solvent non-debtor is unnecessary and a severe hardship on the creditor which clearly outweighs any hardship to the debtor. *In re Phillips, supra* at 197–98; *Matter of McGraw, supra* at 142.

### Conflict of State License Revocation and Bankruptcy Code.

■ There is a sharp and significant conflict between state law and the Bankruptcy Code in this circumstance. It is a conflict between (1) the state's automatic and mandatory revocation, by statute, of the Debtor's real estate license until he repays, or replenishes, the Recovery Fund for any payments made to creditors, and (2) the Bankruptcy Code's "fresh start" goal and the explicit prohibition against state denial or revocation of a license solely because a person has not paid a debt discharged in bankruptcy. 11 U.S.C. § 525.

The Debtor correctly contends that under C.R.S. § 12–61–306, if the Recovery Fund pays on any judgment against the Debtor, then the Debtor's real estate license is automatically and mandatorily revoked until the Recovery Fund is repaid in full, plus interest at the statutory rate.[3] Naturally, this creates a potentially crippling burden on the Debtor and spells probable failure

for his efforts to pay creditors under a Chapter 13 Plan.

In 1984, when *In re Fasse* and *In re Phillips* were decided, revocation of a real estate license was *not* automatic, and *not* mandatory, rather it was a potential sanction to be reviewed after notice and a hearing. This is the principal distinction between the *Fasse* and *Phillips* cases and this case; the principal change in the law between 1984 and 1988. Further, the particular statutory language in C.R.S. § 12–61–306, which attempts to negate and render void the effect of a bankruptcy discharge of a debt, is also a new feature of the state law. The new state law is a deliberate and direct attempt to impose "penalties and disabilities" against bankruptcy debtors in contravention of the Bankruptcy Code. It is a state device to recover on claims which are otherwise dischargeable under federal law.[4]

In *Fasse*, Judge Gueck was not troubled with the state license revocation power because (1) it was not a mandatory or automatic occurrence, and (2) the Bankruptcy Court could (and would) intervene and restrain the state license revocation when and if necessary. It is now different. In apparent response to Judge Gueck's opinion, the state amended the law and it imposes mandatory, self-executing "penalties and disabilities."

The Colorado legislature in enacting the 1987 amendment to the Recovery Fund, failed to fully account for the Supreme Court decision *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In *Perez*, the Supreme Court reviewed the Arizona Motor Vehicle Safety Responsibility Act with regard to Section 17 of the Bankruptcy Act. Article 4 of the Arizona

---

**3.** The statute, effective July 1, 1987, provides as follows: Should the real estate commission pay from the real estate recovery fund any amount in settlement of a claim or toward satisfaction of a judgment against a licensed broker or salesman, the license of the broker or salesman shall be automatically revoked upon the final date of an order by the court as set forth in this section authorizing payment from the real estate recovery fund. No such broker or salesman shall be eligible to be licensed again until he has repaid in full, plus interest at the statutory rate, the amount paid from the real estate recovery fund

on his account. Other than when the claim or judgment is based on negligence, a discharge in bankruptcy shall not relieve a person from the penalties and disabilities provided in this part 3.

**4.** The goal of the Recovery Fund is laudable. It protects and provides some restitution to the public in certain real estate transactions. That purpose, however, does not justify or preserve state laws which are inconsistent with or contradictory to federal laws.

Act provided for suspension of a motor vehicle license for non-payment of a judgment entered against a motorist as a result of an accident. Under Arizona Revised Statute Annotated, Section 28–1163(B) "[a] discharge in bankruptcy following the rendering of any such judgment shall not relieve the judgment debtor from any other requirements of this article." The Supreme Court declared that Section 28–1163(B) was constitutionally invalid because it impaired the Bankruptcy Act's primary purpose of giving a debtor a fresh start.

> '[O]ne of the primary purposes of the Bankruptcy Act' is to give debtors 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'
>
> *Perez, supra* at 1710–1711.

The Supreme Court, in *Perez,* posed a constitutional question by which it declared invalid the Arizona state statute:

> [W]hether a state statute that protects judgment creditors from 'financially irresponsible persons' is in conflict with a federal statute that gives discharged debtors a new start 'unhampered by the pressure and discouragement of preexisting debt.'
>
> *Perez, supra* at 1711.

The answer to that same question in this particular circumstance is, yes. The Colorado Statute and the Bankruptcy Code appear to be in conflict. The state statute compels repayment to the Recovery Fund, or payment of the preexisting debt by the Debtor, or loss of his license and livelihood. This appears to frustrate, indeed defeat, the federal law granting debtors a "fresh start." [5] As a consequence of this irreconcilable conflict, the Colorado statute (C.R.S. § 12–61–306) as written, is unconstitutional; it violates the Supremacy Clause of the United States Constitution, Article VI, Clause 2.

The Bankruptcy Act upon which the *Perez* case was decided has been repealed, but this does not diminish the importance or application of the *Perez* case. Under the new Bankruptcy Code, Section 524 and Section 525 have been enacted. *See, Matter of Layfield,* 12 B.R. 846 (N.D.Ala.1981). They are the particular Code provisions which present the irreconcilable conflict.

The principal, indeed threshold, state law —Bankruptcy Code conflict is found at 11 U.S.C. § 525. Section 525 provides in part:

> ... a government unit may not deny, revoke, suspend, or refuse to renew a license, ... or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, ... a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, ... solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, ... or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

Section 525 codifies *Perez* and is designed to prevent governmental units from frustrating the fresh start policy of the Code by discriminating against debtors under the Code. *Matter of Layfield, supra* at 849; *Green v. Yang, supra* at 685–86.

Under amended C.R.S. § 12–61–306, the language is mandatory that a salesman's license will automatically be revoked upon payment from the Recovery Fund and that the license will not be renewed until he has repaid the fund, and a discharge in bankruptcy shall not relieve the salesman of this sanction. Clearly this section of the statute is in direct contravention of Section 524 and Section 525 of the Bankruptcy Code.

The revocation of a real estate license under this state statute is not "a penalty," or a legitimate exercise of the state's police power. If it were, then it would not conflict with, or be in contravention of Section

---

**5.** The "fresh start" is not, of course, inviolate. For numerous different reasons—particularly for specific wrongful conduct or for public policy purposes—certain debts are not dischargeable. 11 U.S.C. §§ 523 and 727.

525.[6] This state statute is designed, however, to force compensation, or restitution, to the Recovery Fund for the pecuniary loss suffered by payment of the judgment.

The case before this Court is distinguishable from cases such as *In re Sam Daily Realty, Inc.*, 57 B.R. 83 (Bankr.D.Hawaii 1985), which recognize and condone proper exercise of legitimate state police powers and imposition of penalty, not compensatory sanctions. In that case the court upheld the suspension of the debtor's real estate license for two years and the issuing of a $5,000.00 fine. In the *Daily* case, the issuing of the fine and suspension of the debtor's real estate license was clearly an exercise of the state's police power and could not be stayed by the court under Section 362(b)(4). In *Daily*, the suspension of the real estate license was for a term certain (two years) and was not predicated on the repayment of any money to a fund. In addition, the issuing of the $5,000.00 award against the debtor was clearly to punish the debtor for his actions. Under the Colorado Statute, however, renewal of this Debtor's license will not occur until the repayment to the Recovery Fund, whether that repayment be tomorrow, next year, or five years from now. The Debtor's payment would be for compensation for an actual pecuniary loss by its very nature, and is not a fine or penalty as under *Daily*.

The State's automatic and mandatory license revocation for failure to pay the Recovery Fund also contravenes the spirit and purpose of 11 U.S.C. § 524. Section 524(a)(1) and (2) provide:

(a) a discharge in a case under this title

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under Section 727, 944, 1141, 1228 or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; ...

The discharge injunction of 11 U.S.C. § 524 does not extinguish a debt, but prohibits debt collection and relieves the debtor from personal liability on the debt and enjoins a creditor with a discharged claim from commencing or continuing actions to collect on any such debt. *In re Fasse, supra* at 200; *Green v. Yang, supra* at 685; *Matter of Layfield, supra* at 849; *McGraw, supra* at 143. Thus, once this Debtor fulfills the obligations under his Chapter 13 Plan, he will receive a discharge (11 U.S.C. § 1328) and will receive the benefit of the injunction of Section 524. Should the Recovery Fund make demand of the Debtor to replenish the fund, or more accurately to pay the preexisting obligation, this request would be in violation of Section 524.[7]

IT IS THEREFORE ORDERED that the Applicants' Motion for Relief from Stay is granted for the purpose of determining the Debtor's liability, if any, in that certain real estate transaction for which a complaint has been filed in Larimer County District Court.

IT IS FURTHER ORDERED that if the Applicants receive a judgment against the Debtor in that action, the Applicants may take whatever steps are necessary to perfect that judgment so as to proceed to collect from the Recovery Fund pursuant to C.R.S. § 12–61–301 *et seq.* or against any third-party also liable. The Applicants are enjoined from commencing any collection proceedings to recover on said judgment from the Debtor directly.

IT IS FURTHER ORDERED that in view of the declaration of invalidity of

---

6. *See,* 11 U.S.C. § 362(b)(4) which specifically excludes from the automatic stay the "commencement ... of a proceeding by a governmental unit to enforce ... police or regulatory power." *See also, In re Wheeling–Pittsburgh Steel Corp.,* 63 B.R. 641 (Bankr.W.D.Pa.1986).

7. A demand for payment by the Recovery Fund, or any similar act to collect on the claim, would be by the state statutory right of subrogation provided in C.R.S. § 12–61–308.

C.R.S. § 13–61–306, if implementation of said statute by the State of Colorado or the Colorado Real Estate Commission is effected or enforced, the United States Bankruptcy Court, upon motion or commencement of adversary proceedings from the Debtor, will issue such orders as are appropriate or necessary to protect the rights and interests of this Debtor.