In re Robert A. KUCK, Michelle L. Kuck, Debtors.

Robert A. KUCK and Michelle L. Kuck, Plaintiffs,

v.

ALABAMA DEPARTMENT OF PUBLIC SAFETY and Captain H.B. Miller, Defendants.

Bankruptcy No. 89–01742.
Adv. No. 89–0237.

United States Bankruptcy Court, S.D. Alabama.

June 29, 1990.

Jack Curtis, Montgomery, Ala., for Alabama Dept. of Public Safety.

Henry H. Caddell, Mobile, Ala., for debtors.

## MEMORANDUM OPINION [1]

ARTHUR B. BRISKMAN, Bankruptcy Judge.

### FINDINGS OF FACT

On January 27, 1989, while driving the uninsured automobile of her husband, Robert A. Kuck, Michelle L. Kuck (Kuck or collectively with Robert A. Kuck referred to as the Kucks) was involved in an automobile accident with Troy and Jerome Williams. Troy Williams subsequently filed suit against Kuck claiming $3,016.66 as damages.

Kuck was informed of the requirement imposed by Alabama's Motor Vehicle Safety Responsibility Act (the AMVSRA) [2] and enforced by the Director of the Alabama Department of Public Safety, Captain H.B. Miller (collectively referred to as the ADPS) that she file an Accident Report Form SR–13 (SR–13) within ten days after the accident.[3] Kuck submitted an affidavit

---

1. On March 6, 1990, an opinion was issued in this proceeding which appeared in the advance sheet at 111 B.R. 995 (Bankr.S.D.Ala.1990), but was withdrawn. A motion to amend or alter the judgment of the Court dated March 6, 1990, was granted on June 29, 1990. This opinion reflects the Court's findings of fact and conclusions of law regarding the motion of the debtor to hold the ADPS in contempt for violation of the automatic stay and supplants the order of the Court dated March 6, 1990.

2. Alabama Code 1975, § 32–7–1 et seq. (Repl. Vol.1989).

3. In pertinent part, Alabama Code 1975, § 32–7–5 (Repl.Vol.1989) provides:

> The operator of every motor vehicle which is involved in any manner in an accident in this state, in which any person is killed or injured or in which damage to property of any one person including himself, in excess of $250.00 is sustained, shall within 10 days after such accident report the matter in writing to the director. Such report ... shall contain only such information as may be necessary to enable the director to determine whether the requirements for deposit of security under section 32–7–6 are inapplicable by reason of

stating she complied with this requirement by completing and forwarding an SR–13 within ten days after the accident, however, the ADPS contends it never received an SR–13 from Kuck within ten days after the accident.[4]

On August 11, 1989, Kuck received notice from the ADPS that her driver's license and her husband's automobile tag would be suspended effective September 9, 1989, unless she complied with the AMVSRA by submitting an SR–13, provide proof of insurance and post a bond for $3,017.00 or submit a waiver from Troy and Jerome Williams. On September 1, 1989, the Kucks filed a Chapter 7 bankruptcy petition, listing Troy Williams as a creditor. The Kucks' primary purpose for filing their bankruptcy petition was to avoid the loss of their driving privileges.

Kuck, through her attorney, immediately informed the ADPS that she and her husband had filed joint bankruptcy petition. On September 14, 1989, Kuck received notice her driver's license and her husband's automobile tag had been suspended. Kuck was subsequently informed by the ADPS that based upon receipt of the notice of the Kucks' bankruptcy, the requirements for submitting proof of insurance, posting a security bond or obtaining a waiver from Troy and Jerome Williams had been waived.[5] The notice informed Kuck the sole reason the suspensions were effectuated was the failure to comply with Alabama Code 1975, § 32–7–5 (Repl.Vol.1989) and submit an SR–13.

On October 10, 1989, after receiving notice from the ADPS demanding surrender of Kuck's driver's license and her husband's automobile tag on October 11, 1989, the Kucks filed a motion to hold the ADPS in contempt for violation of the automatic stay. The ADPS agreed to refrain from taking any further action with the respect to the surrender of Kuck's driver's license and her husband's automobile tag pending a determination by the Court.

The Court finds the ADPS' requiring Kuck to submit an SR–13 subsequent to the filing of the petition in bankruptcy was not a police power protected by 11 U.S.C. § 362(b)(4). Therefore, in effectuating the respective suspensions, the ADPS acted in contravention of the automatic stay imposed by 11 U.S.C. § 362(a).

The Kucks claim their attorney is entitled to $3,237.00 for services rendered in this action. The Kucks attorney submitted an affidavit stating he rendered 34.6 hours of services on this matter and billed his time at $95.00 per hour. The Court finds the 34.6 hours spent were reasonably expended. Furthermore, the Court finds the hourly rate of $95.00 to be a reasonable hourly rate for the services performed.

## CONCLUSIONS OF LAW

The Kucks contend the ADPS' actions constituted a violation of the automatic stay imposed by 11 U.S.C. § 362(a). The ADPS argues its actions were an exercise of its police power and, therefore, excepted from the operation of the automatic stay by 11 U.S.C. § 362(b)(4).

In pertinent part, § 362 provides:

(a) [A] petition filed under section 301, 302 or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the

---

the existence of insurance or other exceptions specified in this chapter.

**4.** Although there is a genuine issue as to whether Kuck complied with § 32–7–5 by submitting an SR–13 within ten days after the January 27, 1989 accident, the question is not material to the Court's disposition of the motions for summary judgment.

**5.** Although the facts of this case are similar to the situation faced by the Supreme Court in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), because the ADPS waived these requirements, the issue before the Court is not whether the AMVSRA discriminates against debtors by requiring the satisfaction of an otherwise dischargeable debt to avoid a loss of driving privileges and thereby in conflict with 11 U.S.C. § 525(a).

commencement of the case under this title;

11 U.S.C. § 362(a)(1) (1988 ed.). The automatic stay is one of the fundamental protections accorded to debtors by Congress. It reflects Congress' desire to provide the debtor with a breathing spell from the pressures that drove the debtor into bankruptcy and, at the same time, protect creditors. See H.R.Rep. No. 595, 95th Cong., 1st Sess. 340, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6296.

The debtor's protection, however, is not absolute. There are numerous exceptions to the automatic stay based on public policy. Here, the ADPS relies on the exception found in 11 U.S.C. § 362(b)(4) and argues its action in regard to the suspension of Kuck's driver's license and her husband's automobile tag are not subject to the automatic stay. In pertinent part § 362 provides:

> (b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—
>
> (4) under subsection (a)(1) of this section of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

11 U.S.C. § 362(b)(4).

This exception is narrow. It is intended "to permit governmental units to pursue actions to protect the *public health and safety* and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the estate." 124 Cong.Rec. S17206 (daily ed. Oct. 6, 1978) (statement of Senator DeConcini), *reprinted in* 1978 U.S.Code Cong. & Admin. News 6505, 6513 (emphasis added). Further, the House report on § 362(b)(4) states:

> Paragraph (4) excepts commencement or continuation of action or proceedings by governmental units to enforce police or regulatory power. Thus, *where a governmental unit is suing a debtor to*

*prevent or stop violation of fraud, environmental protection, safety, or similar police or regulatory laws ... the action or proceeding is not stayed under the automatic stay.*

H.R.Rep. No. 595, 95th Cong., 1st Sess. 343, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5963, 6299 (emphasis added).

■ In *In re Commerce Oil, Inc.,* 847 F.2d 291 (6th Cir.1988), the Sixth Circuit Court of Appeals used two tests to determine whether an action by a governmental unit is encompassed within the police power excepted from the automatic stay by § 362(b)(4): the pecuniary interest test and the public policy test. If the governmental action is primarily related to public safety or to effectuate public policy, the action or proceeding is excepted from the automatic stay. However, governmental actions or proceedings to adjudicate private rights are not excepted from the automatic stay. *In re Commerce Oil, Inc.,* 847 F.2d at 295.[6] Thus, the issue in this case is not whether the AMVSRA is primarily related to public safety. Rather, the issue for resolution is whether requiring compliance with Alabama Code 1975, § 32–7–5 (Repl.Vol.1989) subsequent to the filing of the Kucks' bankruptcy petition was *primarily related to public safety.*

■ The ADPS concedes the only purpose served by requiring an SR–13 to be filed by parties to an accident of the kind described in § 32–7–5 is to ascertain whether the responsible party is financially capable of redressing the damages resulting therefrom. See *Treadway v. Brantley,* 437 So.2d 93, 96 (Ala.1983). Section 32–7–5 is not self executing by the ADPS. Enforcement of § 32–7–5 is initiated when a party alleging an injury requests the ADPS to implement the AMVSRA. The ADPS then requires compliance and, in so doing, acts primarily to facilitate the collection of a private debt for the alleged victim.[7]

---

**6.** In *Brock v. Rusco Industries, Inc.,* 842 F.2d 270 (11th Cir.), *cert. denied,* 488 U.S. 889, 109 S.Ct. 221, 102 L.Ed.2d 212 (1988), the Eleventh Circuit Court of Appeals held an injunctive action by the Secretary of Labor to prevent a violation of federal minimum wage laws permissible under § 362(b)(4) and, further, enforceable under § 362(b)(5).

**7.** See *Matter of Layfield,* 12 B.R. 846, 849 (Bankr.N.D.Ala.1981). In *Layfield,* the court concluded by requiring the debtor to provide

Here, based upon Troy Williams' request, the ADPS sent notice to Kuck requiring submission of an SR–13, proof of insurance and a waiver from Troy and Jerome Williams or posting a $3,017.00 bond. After learning the Kucks had filed a bankruptcy petition, the ADPS withdrew its demand that Kuck submit proof of insurance, post a bond or obtain a waiver and made no further request for information pertaining to the Kucks' financial responsibility. The ADPS' only demand was for Kuck to submit an SR–13. As the ADPS admits, upon receipt, Kuck's completed SR–13 would merely be placed in a file cabinet and not used for any purpose.

Since the ADPS had determined the Kucks' financial responsibility was no longer material when it received notice of the Kucks' bankruptcy, by requiring Kuck to submit an SR–13 the ADPS sought only technical compliance with a ministerial statutory requirement now devoid of its purpose.[8] Thus, although the ADPS was enforcing the AMVSRA in effectuating the respective suspensions, the facts of this case reveal the ADPS' actions were not *primarily related to public safety*. Accordingly, because Kuck's driver's license and her husband's automobile tag were suspended for Kuck's alleged failure to file an SR–13, the ADPS was not exercising a police power protected by § 362(b)(4). Therefore, the ADPS acted in contravention of the automatic stay imposed by § 362(a).

Having determined the ADPS acted in contravention of the automatic stay imposed by § 362(a), the Court must determine the consequences of the ADPS' actions. In *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982) the Eleventh Circuit Court of Appeals held acts taken in violation of the automatic stay are void and without effect. Accordingly, the suspensions effectuated by the ADPS are of no effect and Kuck's driver's license and her husband's automobile tag are due to be reinstated without any reinstatement fee.

In their motion to hold the ADPS in contempt for violation of the automatic stay, the Kucks also prayed for damages, a reasonable attorney's fee and sanctions against the ADPS. Section 362(h) provides:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages.

Although the Eleventh Amendment serves as a bar to monetary recovery against a state[9] and, thus, precludes an award of punitive damages against the ADPS, the Kucks' attorney is entitled to recover fees for his representation in this matter. In *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1979),[10] the Court

---

proof of financial responsibility, the AMVSRA was primarily related to the collection of a debt rather than public safety. Although the ADPS is not seeking to collect a debt in this case, the nature of the financial responsibility requirement detracts from the ADPS' argument that its actions were a product of its police power.

**8.** In *Treadway v. Brantley*, 437 So.2d at 96, the Alabama Supreme Court stated:
> The purpose of the report required by § 32–7–5 is to enable the Director of Public Safety to determine the financial responsibility of the operator of every motor vehicle involved in an accident in this state. (citation omitted). The plain language of the statute makes it clear that this report is not to be used for any other purpose.

**9.** The Eleventh Amendment provides:
> The judicial power of the United States shall not be construed to extend to any suit in law

or equity, commenced or prosecuted against one of the United States, by citizens of another state, or by citizens or subjects of any foreign states.

In *Hoffman v. Connecticut Department of Income Maintenance*, —— U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) the plurality of the Court held the Eleventh Amendment immunity of the States was not abrogated by Congress when it enacted 11 U.S.C. § 106(c).

**10.** In *Hutto*, the Court also noted:
> Costs have traditionally been awarded without regard for the States' Eleventh Amendment immunity ... The Court has never viewed the Eleventh Amendment as barring such awards, even in suits between States and individual litigants. (footnote omitted)
> A federal court's interest in orderly, expeditious proceedings 'justifies [it] in treating the state just as any other litigant, and imposing

stated "the 11th Amendment is not a bar to the awarding of counsel fees against state governments." *Hutto*, 437 U.S. at 694, 98 S.Ct. at 2575. (citation omitted).

Thus, since § 362(h) authorizes the award of costs and attorney's fees and the Eleventh Amendment does not preclude such an award, the Kuck's attorney is entitled to a reasonable fee for his services in this action. Based upon *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir.1988), the Court concludes the $3,287.00 claimed by the attorney for the Kucks is reasonable in view of the hours expended, the hourly rate and the results obtained.

## ORDER

ARTHUR B. BRISKMAN, Bankruptcy Judge.

In conformity with and pursuant to the memorandum opinion of the Court to be entered contemporaneously with the entry of this Order,

It is ORDERED, ADJUDGED and DECREED that the motion of the debtors, Robert A. Kuck and Michelle L. Kuck, for summary judgment on their motion to hold the Alabama Department of Public Safety and Captain H.B. Miller in contempt for violation of the automatic stay is GRANTED in part; and it is further

ORDERED, ADJUDGED and DECREED that the Alabama Department of Public Safety and Captain H.B. Miller, herein, are subject to the automatic stay imposed by 11 U.S.C. § 362(a) and are ENJOINED from revoking the driver's license of debtor, Michelle L. Kuck, or the automobile tag of debtor, Robert A. Kuck, based upon the automobile accident on January 27, 1989, with Troy and Jerome Williams; and it is further

ORDERED, ADJUDGED and DECREED that the Alabama Department of Public Safety REINSTATE forthwith, without fees, the driver's license of Michelle L. Kuck and the automobile tag of Robert A. Kuck; and it is further

ORDERED, ADJUDGED and DECREED that Henry H. Caddell, the attorney for the debtors, is AWARDED a reasonable attorney's fee for his services in this action of $3,287.00 pursuant to 11 U.S.C. § 362(h); and it is further

ORDERED, ADJUDGED and DECREED that all other relief sought by the debtors, Robert A. Kuck and Michelle L. Kuck, in their motion for summary Judgment is DENIED; and it is further

ORDERED, ADJUDGED and DECREED that the motion of the defendant, the Alabama Department of Public Safety and Captain H.B. Miller, for Summary Judgment on the Plaintiff's motion to hold the Alabama Department of Public Safety and Captain H.B. Miller in contempt for violation of the automatic stay is DENIED.

costs upon it' when an award is called for (citing *Fairmont Creamery Co. v. Minnesota*, 275 U.S. 70, at 77, 48 S.Ct. 97, at 100, 72 L.Ed. 168 (1927)).

Just as a federal court may treat a State like any other litigant when it assesses costs, so also may Congress amend its definition of taxable costs and have the amended class of costs apply to the States, as it does to all other litigants, *without expressly stating that it intends to abrogate the States' Eleventh Amendment immunity*. For it would be absurd to require an express reference to state litigants whenever a filing fee, or a new item, such as expert witness fee, is added to the category of taxable costs. (footnote omitted)

In America, although fees are not routinely awarded, there are a large number of statutory and common-law situations in which al-

lowable costs include counsel fees. (footnote omitted) Indeed, the federal statutory definition of costs, which was enacted before the Civil War and which remains in effect today, includes certain fixed attorney's fees as recoverable costs. (footnote omitted) In *Fairmont Creamery* itself, the Court awarded these statutory attorney's fees against the State of Minnesota along with other taxable costs (footnote omitted) even though the governing statute said nothing about state liability. It is much too late to single out attorney's fees as the one kind of litigation costs whose recovery may not be authorized by Congress without an express statutory waiver of the States' immunity. (footnote omitted)

*Hutto v. Finney*, 437 U.S. at 695–98, 98 S.Ct. at 2576–77 (emphasis added).