In re Ralph L. WALKER, Debtor.

Ralph L. WALKER, Plaintiff,

v.

Robert WILDE, Monty Higley and Jonnie Higley, Defendants.

Bankruptcy No. 88B–01380.
Adv. No. 88PB–0356.

United States Bankruptcy Court,
D. Utah, N.D.

Sept. 30, 1988.

Ralph L. Walker, Highlands Ranch, Colo., pro se.

Robert Wilde, John K. Rice, Midvale, Utah, for defendants.

Mary Ellen Sloan, Salt Lake City, Utah, Chapter 7 trustee.

## MEMORANDUM OPINION

JUDITH A. BOULDEN, Bankruptcy Judge.

THIS MATTER comes before the court upon several motions filed by the defendants Monty Higley and Jonnie Higley (Higleys), in this adversary proceeding.[1] The motions alternatively request an order of annulment of the automatic stay, an order of relief from the injunction provided by 11 U.S.C. § 524, an order of nondischargeability, or an order of extension of time to file objections to dischargeability. This court has jurisdiction as set forth in 28 U.S.C. § 1334 and 28 U.S.C. § 157. The matters before the court are determined to be "core" as defined in 28 U.S.C. § 157(b). The Higleys' motions raise significant issues highlighting the conflict between the fundamental bankruptcy policy of a fresh start for debtors and the due process protection requirement that notice of a bankruptcy filing be given to creditors. Even though the Higleys' motions raise related issues, each motion is considered separately in this opinion. For the reasons set forth below, this court finds the statute and policy weigh in favor of the debtor and therefore denies the Higleys' motions.

## HISTORY OF THE CASE

The Higleys, through their counsel Robert Wilde, Esq. (Wilde), filed an action against the debtor, Ralph L. Walker (Walker), and others in the district court of the

---

1. These motions are more properly brought in the main bankruptcy case, but to lessen the confusion in an already cluttered case file, the court will deal with the motions here.

state of Utah in April of 1985. The complaint sought judgment against Walker for $3,950.00, plus interest and attorneys fees, for the alleged deceptive appropriation of funds from the Higleys by Walker. The allegations arose as a result of what the Higleys characterize as a consumer real estate transaction involving a mobile home. Walker was at that time a real estate licensee.

Walker filed a chapter 11 case in this court in February of 1986, temporarily halting the state court proceeding, but upon dismissal of the case, the Higleys pursued the existing state court action. The matter was set for trial on November 20, 1986. On November 19, 1986, Walker, who was not represented by counsel, telephoned Wilde's office, as well as the Clerk of the District Court of Cache County, to inform them that Walker intended to file bankruptcy and would not appear at the trial.

At the hearing before this court on the Higleys' motions, Wilde testified that it is his practice in similar circumstances to proceed to trial unless he has evidence by way of a case number or court notice that a bankruptcy filing has actually occurred. Wilde did, in fact, proceed to trial in this case because Walker only said he was *going* to file—not that he *had* filed. Walker contends he was told by the Clerk of the State District Court that there would be no trial. Nonetheless, the next day, the court held trial on the merits of the case in Walker's absence. Wilde proffered to the court testimony to establish Walker's liability. The court accepted the uncontested proffer and orally entered judgment in favor of the Higleys in the amount of $3,950.00 plus fees, costs and interest of $2,975.35.

The following day, November 21, 1986, Walker filed a chapter 7 petition in the United States Bankruptcy Court for the District of Colorado, appearing in that matter pro se. After some difficulty in filing the appropriate documentation with the court, Walker successfully filed all required pleadings. He also provided mailing cards containing the names and addresses of his creditors which the court required under Colorado Local Rule 3(d) for its use in constructing a mailing matrix. At the hearing before this court, Walker testified that he listed in his schedules the debt owed to the Higleys.[2] Walker also asserted that he included the Higleys in the mailing cards by notification to the Higleys in care of Robert Wilde, Esq., at 6925 Fort Union Boulevard, Suite 490, Salt Lake City, Utah 84047.[3] The certified copy of the court's mailing matrix does not contain an entry for either Wilde or the Higleys. Wilde testified that neither he nor his clients received the bankruptcy court's notice dated January 22, 1987.

The relevant bar dates and hearings were set by the Colorado bankruptcy court and are pivotal to this evaluation. A meeting of creditors was held pursuant to 11 U.S.C. § 341 on February 12, 1987. The court set April 12, 1987, as the last date to file objections to the dischargeability of a debt pursuant to 11 U.S.C. § 523. Walker was issued a Chapter 7 discharge on June 26, 1987.

Meanwhile, back in state court in Utah, Wilde prepared findings of fact, conclusions of law and a judgment. Walker filed an objection to the pleading, claiming he notified the clerk of the court and Wilde's office that he was filing bankruptcy and generally denying his liability. He also denied that the transaction at issue involved real estate or his status as a real estate licensee, but rather pertained to a transaction under the auspices of a motor vehicle dealers license and the underlying bond. The state court judgment was entered notwithstanding Walker's objections on November 26, 1986, five days after the chapter 7 filing. The state court denied as untimely Walker's subsequent motion to vacate the judgment.

---

**2.** The schedules listed "M. Higley c/o Rob't Wilde" in an amount of $6,000.00. Jonnie Higley was not specifically listed.

**3.** The address used for Mr. Wilde in the schedules was not precisely correct. Robert Wilde's address is 6925 Union Park Center, Suite 490, Midvale, Utah 84047.

Walker, acting pro se, appealed the judgment to the Utah Supreme Court. The court ruled on March 3, 1988, that the judgment was void because of the intervening bankruptcy filing. The court further denied the Higleys' motion for rehearing. On May 23, 1988, the state district court entered an order vacating the judgment pursuant to the Supreme Court's ruling.

Before this court, Wilde testified that at the time of the state court trial, he anticipated collecting any subsequent judgment from the "Real Estate Recovery Fund" (recovery fund) created by Utah Code Ann. § 61–2a–1 to –12, (1986). The recovery fund is established from a fee charged to every person who applies for or renews a real estate sales agent's license. Recovery from the fund up to $10,000.00 is allowed when a final judgment is obtained against a real estate licensee based on fraud, misrepresentation or deceit in any real estate transaction.

Wilde proceeded to gather the necessary information to collect on the judgment from the recovery fund. He contacted Hickman Land Title Company, another creditor of Walker's, and was informed that Walker had, in fact, filed a bankruptcy petition in Colorado. Wilde's notes, entered into evidence, indicate that the title company told him, on February 26, 1987, the name of the bankruptcy court in which Walker filed, the case number, the address of the court in Colorado, and the name and address of Walker's chapter 7 trustee. Wilde unsuccessfully attempted to verify the information by contacting the bankruptcy court in Colorado by telephone. He inquired in writing on March 12, 1987, but did not receive written notice of the bankruptcy filing from the court until May 21, 1987.

Wilde petitioned the state court on July 8, 1987, for an order directing the State of Utah to pay his clients from the recovery fund. He alleged in the petition that Walker had filed bankruptcy in Colorado. On September 21, 1987, the state court granted the petition and the State of Utah paid the Higleys $3,950.00 from the fund. The Utah Code states that:

> The license of any real estate licensee for whom payment from the fund is made under this chapter *shall be automatically revoked.* The licensee may not apply for a new license until the amount paid out on his account, plus interest at a rate determined by the Division of Real Estate with the concurrence of the commission, has been repaid in full. *A discharge in bankruptcy does not relieve a licensee from the penalties and obligations of this section.*

Utah Code Ann. § 61–2a–9 (1986) (emphasis added). As provided in section 61–2a–9, the State of Utah revoked Walker's real estate license without notice or a hearing.

On November 16, 1987, Walker initiated this adversary proceeding against both Wilde and the Higleys claiming a violation of the automatic stay provided in 11 U.S.C. § 362 and seeking damages under 11 U.S.C. § 362(h).[4] On the defendants' motion, the Colorado bankruptcy court transferred venue to Utah.[5]

## DISCUSSION

### I. ANNULMENT OF THE AUTOMATIC STAY

The Higleys first ask the court to annul the automatic stay and to retroactively validate the state court judgment entered after the bankruptcy petition was filed. As discussed above, the state court judgment was voided by the Utah Supreme

---

**4.** Walker seeks judgment finding all three in contempt and awarding actual damages of $8,523.35 and punitive damages of $30,000.00. Wilde and the Higleys have now all answered the complaint. The counter-claim and the pending motions are brought in the Higleys' name only. No separate defenses have been raised between the various defendants.

**5.** The adversary proceeding was styled as a motion but filed as an adversary proceeding in Colorado. Defendants moved for a change of venue which was granted by the Colorado court on March 3, 1988, and both the adversary proceeding and main case were transferred to Utah. Defendants then moved to dismiss the adversary proceeding asserting Walker's pleadings were deficient. This court denied the motion.

Court. The Higleys set forth a two-pronged argument that 1) this case contains circumstances that should, in equity, constitute grounds for annulment, and 2) the Higleys acted in good faith, therefore, the judgment should be validated and the recovery from the state allowed.

The Higleys cite as authority *In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir. 1984), a case in which the court found that a bankruptcy petition was filed in bad faith and therefore granted retroactive relief from the stay and validated a prior foreclosure. In that case, the court interpreted 11 U.S.C. § 362 which, it is conceded, gives the bankruptcy court great latitude in fashioning appropriate relief from the automatic stay if the particular circumstances of the case are so egregious that exceptional relief is warranted. *Id.* at 675. The Higleys argue that such exceptional circumstances in this case include Walker's actions to "conceal" his chapter 7 filing by failing to properly list the Higleys on the mailing cards and by not providing sufficient verbal notice of the actual filing by failing to provide the case number to Wilde. Further, the Higleys contend that Walker improperly listed the Higleys on the schedules by listing the debt in care of "Rob't Wilde" at the wrong address.

The Higleys also argue that annulment of the stay should be granted to validate the good faith actions taken by them that may have technically violated the stay. The rationale that the Higleys provide is that they did not attempt to collect directly from Walker, but instead were attempting to collect from the recovery fund in good faith. It is apparent that the Higleys still want relief to collect from the recovery fund. The court cannot find that these factors are sufficiently critical to justify annulling the stay and validating the judgment. The Higleys had actual knowledge of the stay and the judgment upon which they seek to collect was declared void. Consistent with general principles of comity, this court will refrain from overturning, in effect, the Utah Supreme Court's ruling which is a correct interpretation of the statute.

The rationale of the Eleventh Circuit's opinion in *Albany Partners* does not compel this court to grant a request to annul the stay. Other courts have denied such requests. *See, e.g., In re Boston Business Machines,* 87 B.R. 867 (Bankr.E.D.Pa.1988) (where the court refused to annul the stay to ratify the eviction of the debtor when the notice of the bankruptcy filing was sent late) and *In re Columbus Broadway Marble Corp.,* 84 B.R. 322 (Bankr.E.D.N.Y. 1988) (where the court determined that annulment in a state court suit was not warranted because of the creditor's conduct and the fact that little progress had been made in the state court). This court recognizes that annulment of the stay would be appropriate in some circumstances, but not based on these facts.

■ The court also finds that cumulatively sufficient notice was given to Wilde to create a duty to inquire on the creditors part. There are several factors that make this failure to inquire inexcusable and vitiates any claim of good faith. Walker telephonically informed the state court and Wilde that he was "going to file". Walker did not appear at the state court trial; a circumstance that should have given his assertion that he was going to file more weight. He had, in fact, previously filed a chapter 11. Wilde apparently knew of Walker's financial problems. Wilde stated in his proffer at the state court trial that Walker was impecunious, that he had a negative net worth, that the Higleys would not be able to collect from him and that they would seek compensation from the recovery fund. Furthermore, Walker again asserted his bankruptcy filing in his objection to the state court findings of fact and conclusions of law. While one such circumstance may be insufficient to create a duty to inquire, the cumulative nature of these facts, coupled with Walker's pro se representation and Wilde's familiarity with bankruptcy, create at least a minimal duty to inquire.

No evidence exists of any attempt on Wilde's or the Higleys' part to verify the information supplied by Walker until after February 22, 1987. No attempt was made

to contact Walker regarding the bankruptcy filing even though his address and telephone number were known. Although Walker's compliance with Colorado bankruptcy court's Local Rule 3(d) was insufficient to effect mailing upon the defendants, they nonetheless had a duty to take even the most minimal of steps to verify Walker's informal notice to them. They cannot ignore their duty to inquire and proceed with blinders on to collect from the state for fear that inquiry may produce information that would prevent their recovery.

The United States District Court for the District of Utah in *In re Skinner*, 90 B.R. 470 (D.Utah 1988) has recently provided insight into the burden of inquiry that a creditor has in dealing with the automatic stay.

> In the context of bankruptcy, once a notice of a bankruptcy is communicated to creditors, either directly or indirectly, the burden is placed on the creditors to decide the parameters of permissible conduct against the debtor. Ordinarily, it is not practical to place the burden of informing creditors of the automatic stay on the debtor. Creditors have the greater responsibility for discovering the existence of the automatic stay by watching for bankruptcy notices and making inquiries at the bankruptcy clerk's office.

*Id.* at 480. (citations omitted).

Recovery from the State of Utah, as opposed to Walker directly, should not be used as an excuse to ignore this policy. To do so results in the instant predicament of the Higleys having to return to the state funds paid to them on a void judgment. Under the facts of this case taken as a whole, the court finds that Wilde, on behalf of the Higleys, had a duty to inquire upon receiving notice from Walker of his intent to file, prior to submitting the judgment to the state court, and certainly prior to any attempt to collect on that judgment. Minimal inquiry would have disclosed the filing. It would also have disclosed the invalidity of the state court judgment. Wilde's conduct in continuing with the collection from the recovery fund after he had actual knowledge of the filing and, therefore, that the judgment was void, violated the stay and vitiates any prior good faith on the part of the Higleys. The duty to inquire offsets the defendants' assertions that they acted in good faith and that those circumstances should be grounds for annulment of the stay.

Furthermore, this court looks to the policy considerations set forth in *In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984) to determine if relief from the stay would be appropriate. In applying the *Curtis* guidelines, even considering the equitable arguments of the hardship placed upon the Higleys by the stay, no cause would have existed to lift the stay.[6]

---

6. *In re Curtis*, 40 B.R. at 799–800, sets forth twelve factors to be considered in lifting the stay for cause. Elements numbered 3, 4, 5, 7, 8 and 9 consider factors that have little impact in this case and are not dispositive of the Higleys' motion. The remaining factors are relevant.

Factor 1 questions whether the relief sought will result in only partial resolution of the issue. In this instance, lifting the stay will result in a partial resolution of the issues only if liability is established in the state court so the recovery fund can be charged. The effect of Walker's discharge will still need to be determined by this court. If Walker is not liable as a real estate licensee, the issue will not be resolved as to the Higleys who have already received money from the recovery fund.

Factor 2 requires consideration of whether there will be interference with this case if Walker is forced to defend in state court. The state court proceedings have already splintered the administration of this estate, forcing the debtor to defend at the Utah Supreme Court, at the administrative level as well as in this court. The interference with this case has been significant.

Under the sixth test, Walker is not merely a conduit to recovery as in collection from an insurance policy purchased by the debtor to protect him from such actions. Walker's liability is critical as it relates to the recovery fund. If liability is not predicated on his status as a licensee, no third party action against the recovery fund is available. Walker is the real party in interest, not the state.

Factors ten and eleven weigh against the defendants. The Higleys would have to start over and retry the matter on the merits in state court. No judicial economy is demonstrated by such action.

Balance of hurt is the last test. In this matter, Walker has appeared pro se in the following actions: 1) objections to findings of fact and conclusions of law in state court, 2) motion for

## II. RELIEF FROM THE § 524 INJUNCTION

■ The Higleys next argue that 11 U.S. C. § 524(e) excepts their claim from discharge, therefore this court should modify the permanent injunction set forth in 11 U.S.C. § 524(a)(2) in order to allow them to proceed against a third party, the recovery fund. Section 524(a)(2) "operates as an injunction against the ... continuation of an action ... to collect, recover or offset any such debt as a personal liability of the debtor...." Section 524(e) [7] provides an exception if another entity is "liable" on the debt. The Higleys have failed to prove that another entity is "liable" on this debt. At this point, liability of the recovery fund is predicated on a void judgment.

Since no personal liability has been established for Walker, no collection can be made from the recovery fund. To establish the liability of the recovery fund, the Higleys would have to relitigate Walker's liability in this court, in state court, or have Walker confess judgment.

The Higleys cite as authority for relief under section 524(e), *In re Mann*, 58 B.R. 953 (Bankr.W.D.Va.1986). *Mann* involved a creditor who suffered damages from an automobile accident with the debtor. The creditor sought relief from the section 524 injunction in order to collect from its insurance carrier because the debtor was uninsured. The insurance carrier was required to insure the creditor under Virginia's uninsured motorist statute and relief from the injunction was required to establish the uninsured motorist's liability. The court allowed relief from the injunction to pursue a third party so long as the relief would not subject the debtor or its property to any risk and thereby frustrate the debtor's

fresh start. *Id.* at 958. Relief in *Mann* was appropriate because the debtor could default and the liability of the insurance company could be established without any prejudice to the debtor's fresh start.

Cases relating to relief from the section 524 injunction appear to be fact specific and must be viewed individually as the circumstances dictate. Applying the *Mann* analysis to this case, this court finds the analysis helpful, but that it weighs in favor of Walker. Utah's recovery fund statute is an undisguised attempt by the state to induce collection of a discharged debt from a licensee under Utah Code Ann. § 61–2a–6 (1986). The license is automatically revoked if the division makes payment from the recovery fund based on the licensee's liability. As provided in section 61–2a–9, the revoked license is not reinstated until the debt to the fund is repaid.[8] Walker has continually denied both the Higleys' allegations and his liability under the state statute. Furthermore, the Higleys' request comes more than one year after Walker's discharge. In order for a debtor to have a fresh start, attempts to collect from the debtor must be put to rest early in the case and dilatory requests for relief from the section 524 injunction should not be granted perfunctorily. This court also believes that a presumption in favor of protecting the debtor's fresh start should govern any request for relief from the injunction under section 524.

Perhaps the most relevant line of cases on this point comes from the Colorado bankruptcy court. *In re Harris*, 85 B.R. 858 (Bankr.D.Colo.1988), *In re Phillips*, 40 B.R. 194 (Bankr.D.Colo.1984), and *In re Fasse*, 40 B.R. 198 (Bankr.D.Colo.1984) all

---

reconsideration in state court, 3) appeal to the Utah Supreme Court, 4) motion to change venue in bankruptcy court, 5) complaint seeking damages for violation of the stay, 6) motion to dismiss and for sanctions in the bankruptcy court and 7) the instant motions. Higleys, on the other hand, are prevented from charging the recovery fund, though no trial on the merits has established their right to do so. For the above reasons, the court finds the weight of the factors to be in favor of Walker.

**7.** Section 524(e) provides:

Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

**8.** Though the Higleys would not be the direct instigators of that action, this court cannot ignore the result. Nor can the court find that the revocation of the license, while perhaps arguably not section 541 property of the estate, does not place the debtor in jeopardy nor hinder his fresh start.

involve requests for relief, either from the automatic stay or the discharge injunction, to pursue recovery from the Colorado "Real Estate Recovery Fund".[9] In all these cases, the court determined that relief in favor of the creditor was appropriate to pursue the recovery fund.

*Fasse*, unlike *Harris* and *Phillips*, involved relief from the section 524 injunction. The court allowed relief from the injunction so long as the "enforcement proceedings are not asserted against the debtor." *Fasse*, 40 B.R. at 200 (citing *In the Matter of McGraw*, 18 B.R. 140 (Bankr.W. D.Wis.1982)).

The Colorado court has determined that relief from the section 362 stay is appropriate when "two conditions are met: (1) that no great prejudice will result to the debtor or the debtor's estate, and (2) the hardship to the creditor resulting by continuing the stay considerably outweighs the hardship to the debtor by modification of the stay." *Harris*, 85 B.R. at 860 (citing *Phillips*, 40 B.R. at 197[10]; *Matter of Holtkamp*, 669 F.2d 505 (7th Cir.1982); *Matter of McGraw*, 18 B.R. 140, 142 (Bankr.W.D.Wis. 1982)). This two-step criteria in many ways is similar to the more exhaustive list in *Curtis*, and this court more closely considers the *Curtis* standards as it did above.

The standards for relief from the stay are different from relief from the injunc-

tion under section 524. The section 362 automatic stay is very broad; therefore, the statute provides specific and rapid provisions for relief from the stay. A motion for relief from the stay is brought and resolved early in a case, prior to the time a debtor has received a discharge, and prior to the time when the debtor is attempting to put financial problems to rest. The section 524 injunction is narrower but, once in effect, should control the debtor's fresh start. The statute does not provide a method for relief from the section 524 injunction. Judge-made exceptions are created case by case. They are based on equity principles or are rooted in liberal interpretations of the limitations of section 524.

Walker has at all times denied liability. Post petition, Walker has successfully appealed the state court judgment at the Utah Supreme Court. He also asserts that all transactions, if actionable, would fall under the motor vehicle license statutes, not the recovery fund. While this court makes no determination regarding these issues, they are sufficiently joined that this court should not rely on or encourage Walker to default in a state court action against his wishes. Nor should this court allow collection from the recovery fund if, in fact, the Higleys are not among the class of protected persons covered by the recovery fund.[11] To allow the Higleys to come

---

**9.** The Colorado recovery fund statute interpreted in *Phillips* and *Fasse*, required notice and a hearing before any revocation of a license. The terms of the statute were neither mandatory nor automatic. The statute was changed in 1987 to provide for automatic revocation, a procedure condemned in *Harris*. The *Harris* recovery fund statute is substantially similar to the Utah statute in this regard.

**10.** *Phillips*, however, differs from *Harris* in one important factor. The court in *Harris* determined that it would enter any order necessary to prevent the State of Colorado from revoking the debtor's real estate license. In the present case, the license has already been revoked and indeed, the debtor has been without his real estate license since 1987. There exists no evidence in the record of the damages that may have resulted from the revocation but, nonetheless, this court can find that the revocation of Walker's license was improper, not only because based on a void judgment, but because such actions are in violation of section 525(a) of

the Bankruptcy Code. To say that such actions have no potential effect on the debtor or his property is to ignore reality. However, no relief against the State of Utah has been sought in this court by Walker, therefore, the court will not rule further on this matter.

**11.** In *Harris*, the Colorado bankruptcy court further concluded that the self-operating revocation of license provision of the Colorado statute was in direct contravention of the Bankruptcy Code and, therefore, violates the Supremacy Clause of the United States Constitution, Article VI, Clause 2 and is unconstitutional. *Harris*, 85 B.R. at 862. For the identical reasoning, the automatic revocation of the license under Utah Code Ann. § 61–2a–9 (1986) is invalid because it declares the underlying obligation to be nondischargeable and is therefore in contravention of the Bankruptcy Code, the Supremacy Clause and 11 U.S.C. § 525(a). Section 525(a) states:

> (a) Except as provided in the Perishable Agricultural Commodities Act, 1930 (7 USC 499a–499s), the Packers and Stockyards Act,

to court for relief from the injunction over one year after the discharge has been granted is not appropriate in the present circumstances.

## III. DETERMINATION THAT THE DEBT IS NONDISCHARGEABLE

■ The Higleys next request this court to determine that the claim represented by the state court judgment is nondischargeable. Initially, the court observes that the motion to determine the dischargeability of the debt is procedurally defective. Bankruptcy Rule 7001(6) requires that an adversary proceeding must be filed to determine the dischargeability of a debt. This court has previously reviewed motions that procedurally fall under Rule 7001 and, in denying the same, has strictly construed the rule's guidelines. *See In re Smith and Son Septic and Sanitation Service*, 88 B.R. 375, 380 (Bankr.D.Utah 1988).

■ The court further concludes that even if it were to validate the void state court judgment and consider the Higleys' motion procedurally proper, it would still not benefit the Higleys in establishing a nondischargeable debt because the issues would need to be retried in this court. In order to use the void judgment for the Higleys' benefit, it must set forth the elements of a section 523 action with the necessary specificity. *See In re Brown*, 66 B.R. 13, 16 (Bankr.D.Utah 1986). Even though this court recognizes that the doctrine of collateral estoppel is applicable to bankruptcy actions where the issues have been previously litigated by the parties it would not be of any benefit to the Higleys.

The Tenth Circuit has established the standards by which collateral estoppel is available to the parties. The court recently stated that:

> collateral estoppel is binding on the bankruptcy court and precludes relitigation of factual issues if (1) the issue to be precluded is the same as that involved in the prior state action, (2) the issue was actually litigated by the parties in the prior action, and (3) the state court's determination of the issue was necessary to the resulting final and valid judgment.

*In re Wallace*, 840 F.2d 762, 765 (10th Cir.1988) (citing *In re Shuler*, 722 F.2d 1253, 1256 (5th Cir.1984); *Goss v. Goss*, 722 F.2d 599, 604 (10 Cir.1983); *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981); *see also In re Lombard*, 739 F.2d 499, 502 (10th Cir.1984)). The issues in the present case were not tried on the merits and the judgment would be insufficient to be the basis of a nondischargeability judgment. The court has reviewed the November 26, 1986, state court conclusions of law and notes that the court determined that Walker's actions constituted "misrepresentation" or "deceit"[12], or "deceptive practices".[13] None of these conclusions would be sufficient to support a judgment of nondischargeability in this court. Since the elements of the state action and a dischargeability action are so different, the Higleys must bring their suit in this forum by adversary proceeding.

## IV. EXTENSION OF TIME TO FILE DISCHARGEABILITY COMPLAINT

Having gambled on the sufficiency of their state court judgment, the Higleys

1921 (7 USC 181–229), and section 1 of the Act entitled "An Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943 (57 Stat 422; 7 USC 204), *a governmental unit may not deny, revoke, suspend, or refuse to renew a license,* permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment *against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act,* or another person with whom such bankrupt or debtor has been

associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act. (emphasis added)

12. A term used in Utah Code Ann. § 61–2a–5 (1986) (Utah Real Estate Recovery Fund Act).

13. A term used in Utah Code Ann. § 13–11–4 (1986) (Utah Consumer Sales Practices Act).

failed to file a nondischargeability action pursuant to sections 523(a)(2) and (4) prior to the bar date. The Higleys now request this court to extend the time in which they may file their complaint. Because this request involves considerations that are rooted in the Higleys' due process right to notice of this case prior to any forfeiture of their property rights, the court has taken additional time in rendering its opinion.

■ The Higleys' argument by implication raises the issue that this debt was not discharged under 11 U.S.C. § 523(a)(3) because they did not receive notice or did not have actual knowledge of the bankruptcy filing. Monty Higley's debt was scheduled with Wilde's erroneous address. Jonnie Higley was not listed on the schedules. The official mailing matrix did not contain either the Higleys' or Wilde's names and addresses.

Section 521(1) requires that a debtor file with the court a list of creditors along with the debtor's schedules. Pursuant to Bankruptcy Rule 1007(a)(1), the list shall contain the name and address of each creditor.[14] The list furnished by the debtor provides the means by which all creditors receive notice of the bankruptcy filing.

The Higleys claim that because a mailing card with their name and address was not submitted to the clerk's office, they did not receive notice of Walker's chapter 7 filing and therefore their debt should not be discharged. Section 523(a)(3) provides an exception to discharge of debts that were not listed by the debtor.[15] If the creditor's debt involves fraud as described under subsections 523(a)(2), (4) or (6), this section 523(a)(3) exception is contingent upon the creditor not having notice or actual knowl-

edge of the case. If the creditor does have notice or actual knowledge of the case, then the creditor must timely request the court to determine the debt nondischargeable as required under section 523(c) and by complaint according to Bankruptcy Rule 7001(6). In order for the request to determine dischargeability to be timely, according to Bankruptcy Rule 4007(c), a complaint must be filed within 60 days of the section 341 meeting of creditors.

It is undisputed that Wilde, representing both Monty and Jonnie Higley, had reason to believe Walker was "going to" file as of the trial date, and had knowledge of the actual filing, including the court, case number and trustee on February 22, 1987. Wilde's actual knowledge of Walker's filing was more than a month and a half prior to the dischargeability bar date. The court also notes that the actual notice of this filing was not, as in so many cases of this nature, obtained by a creditor unfamiliar with the courts and the bankruptcy process. It was, instead, received by an attorney proficient in bankruptcy who regularly appears before this court; an attorney well able to gather information pertinent to the protection of his clients' rights. To this end, written inquiry was made by Wilde's office regarding the details of the filing from the Colorado bankruptcy court almost one month prior to the bar date on March 12, 1987.

A creditor's attorney is an agent for the creditor and any notice received by the attorney constitutes notice to the creditor. 3 COLLIER ON BANKRUPTCY ¶ 523.13[5][c] (15th ed. 1987). This rule has been specifically applied by the courts considering the sufficiency of notice for pur-

---

**14.** In this jurisdiction, the list is in the form of a matrix of names and addresses. In Colorado, where Walker originally filed his chapter 7 petition, the list is in the form of 3″ by 5″ index cards.

**15.** Section 523 provides in part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

. . . .

(B) if such debt is of a kind specified in paragraph (2), (4) or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

poses of determining the dischargeability of debt. Where the creditor has actual notice of a bankruptcy proceeding through its attorney-agent, the debt owed is dischargeable regardless of the debt being properly scheduled. *In re Slaiby*, 57 B.R. 770, 771 (D.N.H.1985); *In re Davis*, 19 B.R. 487, 488 (Bankr.S.D.Fla.1982).[16] In the present case, even though the Higleys were not correctly listed on the schedules, and even though notice of the bankruptcy filing was not mailed to them, the court finds that the section 523(a)(3) exception is inapplicable because of the actual knowledge of the bankruptcy filing by their attorney-agent, Wilde.

■ The Higleys' request for an extension of time to file a nondischargeability complaint is also premised on the deficient notice. The last day to file objections to dischargeability in Walker's case was set by the Colorado Bankruptcy Court as April 12, 1987. Wilde, and therefore the Higleys, had actual notice of the bankruptcy filing by February 22, 1987, almost two months prior to the last date to object to dischargeability of the debt. On March 12, 1987, Wilde made written inquiry for notice, but not until after the deadline had passed, on May 21, 1987, was written notice received. Walker's discharge was subsequently granted on June 26, 1987.

It was not until July 15, 1988, almost seventeen months after actual notice of the bankruptcy filing and eight months after the filing of this adversary proceeding, that the defendants answered Walker's complaint. At the same time, the Higleys also filed a counterclaim in this adversary proceeding objecting to the discharge of Walker's indebtedness pursuant to 11 U.S.C. § 523(a)(2) and (4). The counterclaim requests judgment against Walker in the amount of $3,950.00, plus interest, and a declaration that the amount be declared nondischargeable. The counterclaim was not filed by the Higleys until after they unsuccessfully moved to dismiss this adversary proceeding and after the Utah Supreme Court ruled that the state court judgment was void.

An extension of time to file a complaint to determine dischargeability according to Bankruptcy Rule 4007(c) must be sought before the time has run.[17] Wilde and the Higleys allege that since they had no formal notice of the bankruptcy within that time to file a complaint, they should not be bound by this rule.[18]

This court is aware that any ruling regarding an extension of the time to file complaints after the bar date has passed, or a determination of whether a creditor had notice or actual knowledge such to discharge a debt, is predicated upon consideration of the fundamental constitutional right of due process under the Fifth Amendment and the right of a creditor to receive sufficient notice in order to protect its rights. The Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94

---

**16.** The Third Circuit has addressed this issue in *Maldonado v. Ramirez*, 757 F.2d 48 (3rd Cir. 1985) and ruled that notice was insufficient when the notice was sent to a creditor's attorney, but only because the notice was sent on behalf of another creditor. The court concluded that it would be unreasonable to expect attorneys to search for the claims of all of their clients for each bankruptcy notice received. *Id.* at 51. There is no doubt that the actual notice received by Wilde was on behalf of the Higleys.

**17.** Rule 4007(c) provides:
   (c) **Time for Filing Complaint Under § 523(c) in Chapter 7 Liquidation and Chapter 11 Reorganization Cases; Notice of Time Fixed.** A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meet-

ing of creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

**18.** The Higleys have cited for authority *In re Jensen*, 46 B.R. 578 (Bankr.E.D.N.Y.1985) for the proposition that an omitted creditor who does not receive notice sufficient to timely file a complaint under section 523 should be granted an extension of time. That case resulted from a debtor's motion to reopen a closed case, add a creditor not previously listed and discharge the debt. This court finds the facts too far removed from this case to benefit the Higleys' argument.

L.Ed. 865 (1950) has made it clear that reasonable notice is required "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

In two recent cases, the Tenth Circuit has had occasion to rule on matters concerning notice in the context of claims filings and chapter 11 confirmation. *See In re Herd*, 840 F.2d 757 (10th Cir.1988); *Reliable Elec. Co., Inc. v. Olson Const. Co.*, 726 F.2d 620 (10th Cir.1984). In both instances, the court has clearly placed the burden of providing actual formal notice on the debtor with no corresponding duty on the creditor to inquire. The court found a creditor " 'has a right to assume' that he will receive all of the notices required by statute before his claim is forever barred." *Reliable Elec.*, 726 F.2d at 622 (citations omitted). This court is therefore required to determine if there exists a factor so different, in the context of the bar date of a nondischargeability action, that a creditor is charged with a duty to inquire if it has reasonable cause to believe a bankruptcy has been filed.

The policy of Bankruptcy Rule 4007(c) is to fix a relatively short period in which to file section 523(c) complaints. This enables the debtor and creditors to know if the burden of moving forward with these actions has been met by creditors. This policy is consistent with the "fresh start" goals of the Bankruptcy Code. The court is concerned that unfettered extensions to file complaints are contrary to the principle of a fresh start and would be the kind of "slow torture" rejected by the court in *In re Schwartz & Meyers*, 82 B.R. 685 (Bankr. S.D.N.Y.1988).

A substantial distinction can also be drawn between this action and the two Tenth Circuit decisions. In a chapter 11 case, a creditor could not reasonably be expected to know of relevant dates for disclosure statement or confirmation hearings because these dates will differ from case to case depending on the debtor's ability to proceed in the case. These dates related to chapter 11 cases are not specifically set forth by the Bankruptcy Rules, unlike the dischargeability bar date. Also distinguishable are claims bar dates that are set by Bankruptcy Rule 3002. Rule 3002, unlike Rule 4007, contains several exceptions that arguably give the court greater latitude in accepting late claims.[19]

The accommodation the Tenth Circuit has given creditors in filing late claims and requiring notice of chapter 11 hearings has not been followed by the courts in cases involving dischargeability bar dates. Strict enforcement of Rule 4007(c) is mandated because it sets a bar date akin to a statute of limitations. Courts have accordingly denied any request for extensions of the period if such request is not timely filed. *See, e.g., Neeley v. Murchison*, 815 F.2d 345 (5th Cir.1987); *In re Alton*, 837 F.2d 457 (11th Cir.1988); *In re Ricketts*, 80 B.R. 495 (9th Cir. BAP 1987); *In re Price*, 79 B.R. 888 (9th Cir. BAP 1987); *In re Rider*, 89 B.R. 137 (Bankr.D.Colo.1988); *In re Duncan*, 86 B.R. 288 (Bankr.M.D.Fla.1988); *In re Eliscu*, 85 B.R. 480 (Bankr.N.D.Ill.1988); *In re Schwartz & Meyers*, 82 B.R. 685 (Bankr.S.D.N.Y.1988). In *Neeley*, the leading case on the subject, the clerk's office failed to provide notice of the dischargeability bar date, and the creditor filed its action ten days late. The court found that because the creditor had notice of the bankruptcy proceeding in ample time to file its complaint, the complaint should be dismissed as time barred. The court stated the time could be extended "for cause" under Rule 4007 only if filed before the time expired. *Neeley*, 815 F.2d at 347.

In *In re Ricketts*, 80 B.R. 495 (9th Cir. BAP 1987) a creditor who had actual knowledge of a chapter 7 filing, but did not receive the court's notice of filing and the dischargeability bar date, appealed the bankruptcy court's denial of his request for

---

**19.** For example, the Ninth Circuit has expanded claims filings to include "informal" claims. The position of the Ninth Circuit is that the filing of a claim is so fundamental to sharing in the available assets of a debtor that the rulings should mitigate in favor of liberal allowance of their filing. *See, e.g., In re Anderson–Walker Industries, Inc,* 798 F.2d 1285 (9th Cir.1986); *In re Sambo's Restaurants, Inc.,* 754 F.2d 811 (9th Cir.1985).

extension of time requested after the bar date had passed. The appeal was predicated upon excusable neglect, mistake or inadvertence of Rule 60(b), Federal Rules of Civil Procedure.[20] The court held that excusable mistake in relation to dischargeability complaints has been written out of the Code by Rule 4007(c) and found that the court had no discretion to enlarge the time for filing a complaint after the time has passed. *Id.* at 497. The other cases cited by the court take an equally strict stand.

The present case is not a case where the court's notice was in error, nor where the creditor was detrimentally misinformed. It is a case where the creditor did not receive the court's notice arguably because of the debtor's actions, but still had actual knowledge of the bankruptcy filing. The Higleys do not argue that it was impossible for them to obtain the bar date from the court's file. They do contend they could not obtain the bar date over the telephone and the court's delay in responding to their correspondence prejudiced them. They did not, however, exhaust all of their remedies. There is no evidence that they attempted to contact the debtor or the trustee, nor that they attempted to retain local counsel in Denver to review the file. They apparently did not ask other creditors (Hickman Title for example) for the relevant dates. They did not immediately move to extend the bar date once they received written notice from the bankruptcy court. Instead, they waited some seventeen months from the date of actual knowledge to file this motion. Nor did the case sit dormant for that time. The disputed issues were vigorously pursued by the parties.[21] The Higleys now complain of the consequences of their election to proceed by the state court remedy rather than to protect their rights in this court. This

court finds that the Higleys' delay was significant and that because of their failure to inquire, they cannot now properly complain of the consequences of their inaction.

It is the intent of Congress to severely constrain the time limits on dischargeability actions in order to give the debtor a fresh start. Due process requires that creditors so constrained should be given notice so that they may protect their rights. Creditors cannot, however, sit on those rights, elect other remedies and then complain if those remedies fail. Considering all the facts and circumstances of this case, the court finds that the Higleys had actual knowledge of the bankruptcy and could have ascertained the bar date in time to protect themselves. For this court to grant a request for an extension some seventeen months after the bar date under these circumstances unduly violates Walker's right to a fresh start and rewards the Higleys for their ostrich-like conduct.

The requirements of due process as set forth in *Mullane* and followed by the Tenth Circuit in *Herd* and *Reliable Electric* are not compromised by this court's ruling. Just as the Colorado bankruptcy court distinguished *Herd* and *Reliable Electric* in *Rider*, the facts of this case are equally distinguishable. In questions involving the running of the dischargeability bar date, if a creditor has actual notice, nothing will toll the running of that date with the exception of a timely filed request to extend the time to file a complaint.

Based upon the above rationale, and after due consideration of the equities of the case, the court will enter an order denying the relief sought in the defendants' motions.

**20.** Rule 9006(b)(3) excepts Rule 4007(c) from the excusable neglect standard. The *Ricketts* court discussed the bankruptcy court's "inherent equitable power" to prevent an injustice, but did so in the context of correcting its own mistake, not the mistake of the creditor. *Ricketts*, 80 B.R. at 497.

**21.** From the date of the Higleys' actual knowledge of the bankruptcy filing to the date the

nondischargeability counterclaim and motion to extend time was filed, there have been at least twenty seven pleadings filed in the state district court, state supreme court, bankruptcy court for the State of Colorado or bankruptcy court for the State of Utah, all concerning the validity of the state court judgment, Walker's instant complaint or the Higleys' various motions.