In re Ralph L. WALKER, Debtor.

Ralph L. WALKER, Plaintiff-appellee,

v.

Robert WILDE, Monty Higley, and Jonnie Higley, Defendants-appellants.

No. 88–NC–0103A.

United States District Court, D. Utah, C.D.

June 8, 1989.

---

John K. Rice, Midvale, Utah, for defendants-appellants.

Ralph L. Walker, Highlands Ranch, Colo., pro se.

Mary Ellen Sloan, Salt Lake City, Utah, Chapter 7 Trustee.

Stephen Plowman, Logan, Utah, for debtor/plaintiff-appellee.

## MEMORANDUM DECISION AND ORDER

ALDON J. ANDERSON, Senior District Judge.

This bankruptcy case came before the court on certain creditors' appeal from the order of the bankruptcy court, the debtor's motion to dismiss the appeal, and the creditors' motion to strike the motion to dismiss and for sanctions. The court heard argument on the motions on February 22, 1989 and discussed the possibility of settlement with the parties. When settlement efforts failed, the court took the matter under advisement.

After reviewing the record on appeal and the parties' written and oral arguments, the court enters this ruling.

### Factual background

The debtor is Ralph Walker; the creditors who filed this appeal are Monty and Jonnie Higley. In April 1985, the Higleys sued Walker in Utah state court, alleging that he deceptively appropriated $3,950 from them in a real estate transaction involving a mobile home. At that time, Walker was a real estate broker.

Walker filed a Chapter 11 petition in bankruptcy in February 1986, temporarily halting the state court action on the eve of trial. Later, his bankruptcy petition was dismissed, and the Higleys' action proceeded.

Walker stated that he was going to file another bankruptcy petition, but the Higleys deny receiving formal notice of another petition until they obtained a judgment which was satisfied from the Utah Real Estate Recovery Fund. Walker had in fact filed a Chapter 7 petition in Colorado on November 21, 1986. When he appealed to the Utah Supreme Court, the judgment was set aside in view of the automatic stay under bankruptcy law.

The Bankruptcy Court for the District of Colorado granted Walker a Chapter 7 discharge on June 26, 1987. He had also filed an adversary proceeding against the Higleys, seeking damages for violation of the automatic stay. The court transferred venue of both the bankruptcy and the adversary proceedings to Utah.

The Higleys filed several motions with the bankruptcy court here. *See, In re Walker*, 91 B.R. 968 (Bankr.D.Ut.1988). They appeal the denial of two of those motions: a motion for relief from the post-

discharge injunction and a motion for an extension of time to file an objection to the dischargeability of their claim.

*Motions to dismiss and to strike*

Walker argues that the Higleys' appeal should be dismissed because the bankruptcy court's order denying their motions is an interlocutory order which is not appealable. The bankruptcy court dealt with the motions as part of the adversary proceeding but noted that they were "more properly brought in the main bankruptcy case." *Walker*, 91 B.R. at 969 n. 1. Because the order relates more to the bankruptcy than to the on-going adversary proceeding, the Higleys say it is a final order. In any event, they insist that the order is appealable. They ask the court to strike the motion to dismiss as untimely and frivolous.

The court does not need to decide whether the bankruptcy court's order was final or interlocutory since interlocutory orders may also be appealed with leave of court. 28 U.S.C. § 158(a). Walker protests that no leave to appeal was obtained, but the bankruptcy rules provide:

> Appeal improperly taken regarded as a motion for leave to appeal. If a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district court or bankruptcy appellate panel may grant leave to appeal or direct that a motion for leave to appeal be filed.

11 U.S.C. Rule 8003(c) (1984).

In these circumstances, the court regards the Higleys' timely notice of appeal as a motion for leave to appeal and grants the motion.

*Standard of review*

In reviewing an order of the bankruptcy court, "[f]indings of fact by the bankruptcy court are not set aside unless clearly erroneous; conclusions of law are subject to *de novo* review." *In re Posta*, 866 F.2d 364, 366–67 (10th Cir.1989).

*Motion for relief from the post-discharge injunction*

The Higleys argue that in denying their motion for relief from the post-discharge injunction, the bankruptcy court made three main errors: finding that they failed to prove another entity liable on the debt; finding that relief from the injunction would prejudice Walker's "fresh start"; and applying the *Curtis* standard.

*Liability of another entity*

When a discharge in bankruptcy is granted, the automatic stay of proceedings against the debtor is replaced by the statutory injunction set forth at 11 U.S.C. § 524(a)(2). However, "discharge of a debt of the debtor does not affect the liability of any other entity on ... such debt." 11 U.S.C. § 524(e).

The Higleys want the injunction modified so they can proceed against another entity, the Utah Real Estate Recovery Fund.

The recovery fund is established from a fee charged to every person who applies for or renews a real estate sales agent's license. To recover from the fund, a person must obtain a final judgment against a real estate licensee based on fraud, misrepresentation or deceit in any real estate transaction. *See*, Utah Code Ann. §§ 61–2a–1 to 61–2a–12 (1986). Then,

> [t]he license of any real estate licensee for whom payment from the fund is made under this chapter shall be automatically revoked.... A discharge in bankruptcy does not relieve a licensee from the penalties and obligations of this section.

§ 61–2a–9 (1986).

The bankruptcy court reasoned:

> Since no personal liability has been established for Walker, no collection can be made from the recovery fund. To establish the liability of the recovery fund, the Higleys would have to relitigate Walker's liability in this court, in state court, or have Walker confess judgment.

*Walker*, 91 B.R. at 974.

The Higleys say there is no requirement that they prove the debtor's or other entity's liability before proceeding on the debt. They ask the court to follow a factually similar case, *In re Fasse*, 40 B.R. 198

(Bankr.D.Colo.1984). There, the court held that § 524 did not prevent a creditor from continuing her state court action against a real estate broker who was discharged in bankruptcy in order to perfect her right to recover from Colorado's recovery fund.

As the bankruptcy court emphasized, relief from the injunction was allowed in *Fasse* only "so long as the 'enforcement proceedings are not asserted against the debtor.'" *Walker*, 91 B.R. at 975. At that time, Colorado's recovery fund had no mandatory or automatic provision for revocation of real estate broker's license. *Id.*, n. 9. When it was amended in 1987 to provide for automatic revocation, the Bankruptcy Court for the District of Colorado found the new statute unconsitutional. *Id.*, nn. 9 & 11. The bankruptcy court for this district believed Utah's provision for automatic revocation is likewise invalid because "it declares the underlying obligation to be nondischargeable and is therefore in contravention of the Bankruptcy Code, the Supremacy Clause and 11 U.S.C. § 525(a)." *Id.*, n. 11.

The bankruptcy court did not need to reach the issue of the constitutionality of the recovery fund statute, and neither does this court. The important point is that, in view of the automatic revocation provision, the Higleys could not recover from the fund without proving Walker's liability and, at least indirectly, asserting enforcement proceedings against him. For this reason, the bankruptcy court correctly concluded that action against the recovery fund would violate the statutory injunction.

### Prejudice to Walker's Fresh Start

■ The bankruptcy court determined that action against the recovery fund would prejudice the "fresh start" to which Walker is entitled after a discharge in bankruptcy, citing *In re Mann*, 58 B.R. 953 (Bankr.W.D.Va.1986).

In *Mann*, a creditor wanted the § 524 injunction lifted so she could seek recovery in state court under the uninsured motorist clause of her policy. The court explained that the injunction is needed "only when continuance of the civil suit will result in efforts to collect a judgment award from the debtor or his property." 58 B.R. at 958. The state court action was allowed to proceed because the "Debtor and his property are not subject to any risk and maintenance of the suit does not frustrate the policy of the Bankruptcy Code in giving the Debtor a fresh start in his economic life." *Id.*

The Higleys argue that relitigation would not be required. Even if it were required, they say defending a civil lawsuit would not be prejudicial to Walker's fresh start if no effort is made to collect a judgment from him.

Again, the Higleys' argument ignores the indirect but automatic effect of the Utah statute on which they rely. Under the statutory scheme, Walker's license would be revoked if they recover from the fund, and he would have to reimburse the fund to obtain a new license—or obtain a judgment that the requirement is invalid.

The Higleys say the bankruptcy court disregarded the following facts: (1) Walker's license was revoked in September 1987; (2) he has not engaged in the occupation of selling real estate since February 1986 but instead works as a real estate appraiser; and (3) he has made no attempt to have his license reinstated.

The bankruptcy court noted that Walker's license had already been revoked and that there was no evidence of damages from the revocation. *Walker*, 91 B.R. at 975 n. 10. Nevertheless, the bankruptcy court thought the argument that "such actions have no potential effect on the debtor or his property is to ignore reality." *Id.*

The potential for prejudice may support a finding that the injunction or automatic stay should be enforced. For example, in *In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984), the bankruptcy court enforced the automatic stay because of the "*potential disruption and expense to the debtors' estate.*" At 807 (emphasis added).

### The Curtis standard

The Higleys also cite error in the bankruptcy court's reliance on *In re Curtis*, 40

B.R. 795 (Bankr.D.Utah 1984). *Curtis* set forth the standards for relief from the automatic stay, but this case involves relief from the post-discharge injunction.

The bankruptcy court explained that creditors have a greater opportunity to obtain relief if they seek it early in the proceedings. The standards for relief from the injunction are narrower than the standards for relief from the automatic stay because post-discharge relief may affect the debtor's fresh start. Thus, the bankruptcy court considered the *Curtis* standards "more closely" here. *Walker*, 91 B.R. at 975.

The court agrees that in these circumstances the Higleys cannot fail to seek relief from the automatic stay and then expect "to come to court for relief from the injunction over one year after the discharge has been granted." *Id.* at 975–76. The bankruptcy court did not err in drawing analogies to the *Curtis* case and applying a stricter standard here.

### Motion for an extension of time to determine dischargeability

A complaint to determine the dischargeability of a creditor's claim generally must be filed within sixty days after the first meeting of creditors, but certain kinds of claims may be excepted from this deadline under 11 U.S.C. § 523(c). The bankruptcy court agreed the Higleys' claim was one of the kinds specified in § 523(c) but held that section "inapplicable because of the actual knowledge of the bankruptcy filing by their attorney-agent, Wilde." *Walker*, 91 B.R. at 978.

The record shows that Walker failed to list the Higleys on his list of creditors so they would receive formal notice of the bankruptcy. However, Wilde's notes indicated that on February 22/26, 1987, another creditor informed Wilde of the bankruptcy petition, the court in which it was filed, the court's address, the case number, and the name and address of the chapter 7 trustee. Wilde said he contacted the court and was told to make written inquiry but received no response until May 21, 1987— more than a month after the April 12, 1987

bar date for filing a complaint to determine dischargeability.

The Higleys say the bankruptcy court made three errors in denying their motion for an extension of time: (1) concluding that Wilde was imputed with knowledge of the bankruptcy when Walker said he was going to file; (2) failing to determine whether Wilde's actual knowledge came soon enough to file a timely proof of claim or request a determination of dischargeability; and (3) finding that Wilde breached his duty of inquiry.

A recent Tenth Circuit decision is dispositive of these issues: *In re Green*, 876 F.2d 854 (10th Cir.1989). There, the creditor had asserted a claim against the debtor in state court. While the creditor was seeking sanctions against the debtor for failure to respond to discovery, the debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. The creditor was not listed on the creditors' list and received no formal notice of the petition. However, it learned of the petition from its general partner sometime in August 1986. The bar date for filing complaints to determine dischargeability was September 2, 1986. For some reason, the creditor did not file its complaint until two days after the bar date. The bankruptcy court dismissed the complaint as untimely, and the district court affirmed.

The Tenth Circuit also affirmed, holding that "a creditor who does not receive formal notice of the filing of a petition for bankruptcy relief under Chapter 7, but who has actual knowledge shortly after the filing, is bound by the bar date for filing complaints to determine dischargeability." *Green*, at 855.

The court explained that there are "statutory and substantive differences between creditor's rights under Chapters 11 and 7" of the Bankruptcy Code. *Id.*, at 856. In the Chapter 11 context, "a creditor, who has general knowledge of a debtor's reorganization proceedings, has no duty to inquire about further court action." *Id.*, quoting *Reliable Elec. Co. v. Olson Constr. Co.*, 726 F.2d 620, 622 (10th Cir. 1984). However, the rule that governs notice and dischargeability in Chapter 11 does

not apply in Chapter 7. Under § 523(a)(3)(A), the debt of a creditor with actual, timely notice can be discharged. Therefore, "a Chapter 7 creditor holding an unsecured claim does *not* have the 'right to assume' receipt of further notice." *Green*, at 857.

■ Although the Higleys did not receive formal notice that Walker had filed a Chapter 7 petition, the evidence was clear that they had actual knowledge through their agent and attorney on February 22/26, 1987—approximately six weeks before the bar date for filing a complaint. Under the rule affirmed in *Green*, they were bound by the bar date.

The bankruptcy court concluded that "if a creditor has actual notice, nothing will toll the running of that date with the exception of a timely filed request to extend the time to file a complaint." 91 B.R. at 980. The bankruptcy court's conclusion comports with the *Green* rule. It also comports with the policy of giving the debtor a "fresh start" after a discharge in bankruptcy.

The Higley's motion for an extension of time to file a complaint was filed on July 15, 1988—more than a year after Walker's debts were discharged, more than fifteen months after the bar date and more than sixteen months after they received actual notice of the bankruptcy. In these circumstances, the court agrees that the motion is untimely.

#### Order

The Higleys' notice of appeal is regarded as a motion for leave to appeal and is granted. Walker's motion to dismiss the appeal and the Higleys' motion to strike the motion to dismiss are denied.

As to the merits of the appeal, the bankruptcy court's findings of fact are not clearly erroneous, and its ultimate conclusions of law are correct. The court therefore enters this order affirming the bankruptcy court's decision.